**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-00401-KBJ |
| UNITED STATES CAPITOL POLICE, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    I.      THE U.S. CAPITOL POLICE................................................................................ 2

    II.     PLAINTIFF'S REQUEST TO THE USCP ........................................................... 3

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ........................................................................................................................... 4

    I.      SOVEREIGN IMMUNITY BARS THIS ACTION............................................... 5

    II.     PLAINTIFF'S CLAIMS LACK MERIT.............................................................. 6

          A.     The USCP does not possess or control the email repositories for the Capitol Police Board, and any responsive communications are in any event available through an alternative mechanism. .................................. 6

          B.     None of the requested materials are "public records" subject to the common law right of access....................................................................... 9

                 1.     Emails between the USCP Executive Team and the Capitol Police Board are not public records ................................................ 9

                 2.     USCP video footage from within the Capitol on January 6 is not a public record............................................................................. 11

          C.     Even if Plaintiff had sought "public records," there are compelling reasons the requested materials should not be disclosed. ......................... 13

CONCLUSION....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*ACLU of N. Cal. v. DOJ*,
No. C 04-447 PJH, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ........................................... 14

*Block v. North Dakota*,
461 U.S. 273 (1983) .................................................................................................................. 4

*Callaway v. U.S. Dep't of Treasury*,
893 F. Supp. 2d 269 (D.D.C. 2012) .......................................................................................... 7

*Cofield v. United States*,
64 F. Supp. 3d 206 (D.D.C. 2014) ............................................................................................ 5

*Ctr. for Nat'l Sec. Stud. v. Dep't of Justice*,
331 F.3d 918 (D.C. Cir. 2003) .................................................................................................. 8

*District of Columbia v. United States*,
67 Fed. Cl. 292 (2005) .............................................................................................................. 2

*Dugan v. Rank*,
372 U.S. 609 (1963) .................................................................................................................. 5

*Elec. Privacy Info. Ctr. v. Dep't of Def.*,
355 F. Supp. 2d 98 (D.D.C. 2004) .......................................................................................... 14

*Higg-A-Rella, Inc. v. Cnty. of Essex*,
660 A.2d 1163 (1995) .............................................................................................................. 10

*\* Judicial Watch v. Schiff*,
474 F. Supp. 3d 305 (D.D.C. 2020), *aff'd* 998 F.3d 989 (D.C. Cir. 2021) ...................... 5, 9, 11

*Kissinger v. Reps. Comm. for Freedom of the Press*,
445 U.S. 136 (1980) .................................................................................................................. 7

*Lane v. Peña*,
518 U.S. 187 (1996) .................................................................................................................. 5

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949) .................................................................................................................. 5

*McLean v. United States*,
566 F.3d 391 (4th Cir. 2009) .................................................................................................... 5

*Nixon v. Warner Comm'ns, Inc.*,
  435 U.S. 589 (1978)..................................................................................... 8

*Pentagen Techs. Int'l, Ltd. v. Comm. on Appropriations*,
  20 F. Supp. 2d 41 (D.D.C. 1998)............................................................... 11

*Pollack v. Hogan*,
  703 F.3d 117 (D.C. Cir. 2012)..................................................................... 5

*Pro-Football, Inc. v. Harjo*,
  284 F. Supp. 2d 96 (D.D.C. 2003)............................................................... 4

*United States v. El-Sayegh*,
  131 F.3d 158 (D.C. Cir. 1997).................................................................. 6, 8

*United States v. Mitchell*,
  463 U.S. 206 (1983)..................................................................................... 4

* *Wash. Legal Found. v. U.S. Sent'g Comm'n*,
  17 F.3d 1446 (D.C. Cir. 1994)..................................................................... 9

* *Wash. Legal Found. v. U.S. Sent'g Comm'n*,
  89 F.3d 897 (D.C. Cir. 1996)............................................................... *passim*

**Statutes**

2 U.S.C. § 1901 ................................................................................................ 2

2 U.S.C. § 1961 ................................................................................................ 2

2 U.S.C. § 1969 ................................................................................................ 2

2 U.S.C. § 1971 ................................................................................................ 7

2 U.S.C. § 1979 ......................................................................................... 15, 16

5 U.S.C. § 551 ................................................................................................. 1

5 U.S.C. § 552 ................................................................................................. 1

28 U.S.C. § 1361 ............................................................................................. 5

Pub. L. No. 108-7, div. H, § 1014(a)(2) (2003)............................................. 2

**Rules**

Federal Rule of Civil Procedure 56 ................................................................ 4

**Other Authorities**

H. Res. 503 (117th Cong.) (June 30, 2021) ............................................................................ 14, 15

**INTRODUCTION**

In this case, Plaintiff Judicial Watch seeks from the United States Capitol Police (USCP) internal email correspondence and sensitive video surveillance footage from the insurrection attempt at the U.S. Capitol on January 6, 2021.  USCP is part of the Legislative Branch, which is not subject to the Freedom of Information Act (FOIA).  5 U.S.C. §§ 551(1)(A), 552(f)(1).  Plaintiff therefore brings this suit not under FOIA but under an asserted "common law right of access to public records."  Compl. at 1, ECF No. 1.  But judgment for Defendant is warranted for multiple reasons.

First, Plaintiff has sought to sue an agency of the Legislative Branch without identifying an unequivocal congressional waiver of sovereign immunity, as is required for this Court to have jurisdiction.  Plaintiff's suit thus fails for a lack of subject matter jurisdiction.  Second, even if Plaintiff could overcome sovereign immunity, Plaintiff lacks any right to the materials it has requested because they are not "public records" cognizable under the common law right of access.

As the name implies, the common law right of access to public records has been recognized to "bestow[] upon the public a right of access to *public* records and documents."  *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) (*WLF II*) (emphasis added).  Internal email correspondence of the senior-most officials in the USCP and surveillance video footage from the USCP's security camera system are in no sense "public records" under the governing test in the D.C. Circuit.  Initially, for one category of emails Plaintiff has requested— emails between the Capitol Police Board and three agencies in the Executive Branch—the USCP, which is separate from its overseeing Board, does not have access in the first instance.  And for the USCP to search its own servers for the possibility of finding emails forwarded from the Board would impose an unreasonable burden on the USCP, particular when Plaintiff can simply submit

a FOIA request to any of the three Executive agencies for responsive emails.  In any event, what email communications responsive to Plaintiffs' request the USCP does possess are the communications of USCP leadership in the moment of one of the most serious attacks on the Capitol in U.S. history.  The USCP is aware of no court that has required this type of correspondence—whether internal or to the Capitol Board or congressional stakeholders—to be made available to the public on a wholesale basis, and this Court should not be the first.  The USCP's video surveillance footage, meanwhile, is maintained strictly for national security and law enforcement purposes, not for public broadcast as Plaintiff would have it.  Plaintiff has no common law right to access any of the materials it has sought, and the USCP is therefore entitled to summary judgment

## BACKGROUND

### I.     THE U.S. CAPITOL POLICE

The U.S. Capitol Police is a law enforcement agency within the Legislative Branch.  It is charged with safeguarding the Congress and its Members, employees, and visitors, and congressional buildings and grounds from crime, disruption, and terrorism.  The mission of the USCP is to protect and secure Congress so it can fulfill its constitutional and legislative responsibilities in a safe, secure, and open environment.

Pursuant to statute, the USCP is headed by the Chief of the Capitol Police, and carries out its mission under the direction of the Capitol Police Board.  2 U.S.C. §§ 1901, 1961(a), 1969(a).  The Board consists of the Sergeant at Arms of the U.S. Senate, the Sergeant at Arms of the House of Representatives, and the Architect of the Capitol.  *Id.* § 1961.  Since 2003, the Chief of the Capitol Police has served on the Board in an *ex officio*, non-voting capacity.  *See* Pub. L. No. 108-7, div. H, § 1014(a)(2), 117 Stat. 361 (2003).

These three members of the Board are not employees or otherwise part of the USCP; rather, the Sergeants at Arms are officers of their respective houses of Congress and the Architect of the Capitol serves both Congress and the Supreme Court. *See District of Columbia v. United States*, 67 Fed. Cl. 292, 326 (2005) ("The Capitol Police is an entity created by Congress and overseen by the Capitol Police Board, which consists of the Sergeant of Arms of the United States Senate, the Sergeant of Arms of the House of Representatives, and the Architect of the Capitol."). Additional oversight of the USCP is conducted by committees in both the House of Representatives and the Senate.

## II.    PLAINTIFF'S REQUEST TO THE USCP

On January 21, 2021, Plaintiff Judicial Watch requested from the USCP copies of the following three categories of information under an asserted common law right of access to public records:

> 1. Email communications between the U.S. Capitol Police Executive Team and the Capitol Police Board concerning the security of the Capitol on January 6, 2021. The timeframe of this request is from January 1, 2021 through January 10, 2021.
>
> 2. Email communications of the Capitol Police Board with the Federal Bureau of Investigation, the U.S. Department of Justice, and the U.S. Department of Homeland Security concerning the security of the Capitol on January 6, 2021. The timeframe of this request is from January 1, 2021 through January 10, 2021.
>
> 3. All video footage from within the Capitol between 12pm and 9pm on January 6, 2021.

*See* Declaration of James W. Joyce (Joyce Decl.) ¶ 3, Ex. A.  By email dated February 11, 2021, the USCP declined to provide the requested information, stating that "[t]he email communications and video footage information requested . . . are not public records."  Joyce Decl., Ex. B.

Shortly after, on February 16, 2021, Plaintiff filed the instant action, asserting a common

law right of access to the requested materials.  *See* Compl.  In its Complaint, Plaintiff asks the Court to declare the USCP in violation of Plaintiff's asserted common law right of access; issue a writ of mandamus compelling the USCP to release the requested materials; and award attorney's fees and costs.  *Id.* at 3.  The USCP timely answered the Complaint on May 25, 2021.  *See* ECF No. 10.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment." *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 112 (D.D.C. 2003) (citation omitted).  Rather, the dispute must concern a question of fact that is material, meaning that it is "capable of affecting the substantive outcome of the litigation." *Id.*  The dispute must also be genuine, meaning that it is "supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party." *Id.*

## ARGUMENT

Summary judgment should be entered in favor of the USCP for multiple reasons.  First, Plaintiff has not identified a waiver of sovereign immunity, and the Court therefore lacks jurisdiction.  Second, even if sovereign immunity did not bar this suit, Plaintiff lacks any right to the materials it has requested because they are not "public records" cognizable under the common law right of access.   Third, even if Plaintiff had sought "public records," the USCP's interests in confidentiality would outweigh any public interest in those materials.

## I.      SOVEREIGN IMMUNITY BARS THIS ACTION.

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota*, 461 U.S. 273, 287 (1983); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). That immunity "extends to the United States Congress when it is sued as a branch of the government," *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), and encompasses agencies within the Legislative Branch, *see Cofield v. United States*, 64 F. Supp. 3d 206, 213-14 (D.D.C. 2014) ("[S]overeign immunity bars any claim for money damages against the United States (including the U.S. Senate) and its agencies.").

Accordingly, to proceed with this suit, Plaintiff must identify a waiver of sovereign immunity that is "unequivocally expressed in statutory text." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (a waiver of sovereign immunity "will not be implied"). Yet Plaintiff has identified no such unequivocal waiver that would permit this action. Nor can Plaintiff rely on its conclusory claim to mandamus jurisdiction under 28 U.S.C. § 1361, *see* Compl. ¶ 1. "It is well settled that [section 1361] does not by itself waive sovereign immunity." *WLF II*, 89 F.3d at 901.

Plaintiffs may also assert that the *Larson-Dugan* exception to sovereign immunity applies here. "Under this exception, 'suits for specific relief against officers of the sovereign' allegedly acting 'beyond statutory authority or unconstitutionally' are not barred by sovereign immunity." *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689 (1949)); *see also Dugan v. Rank*, 372 U.S. 609, 621-22 (1963). But Plaintiff has not identified any "officer of the sovereign" upon whom is allegedly

imposed some non-discretionary statutory or constitutional duty to disclose the requested records.[1] Because sovereign immunity bars this suit, USCP is entitled to summary judgment due to a lack of subject matter jurisdiction.

## II.   PLAINTIFF'S CLAIMS LACK MERIT

Even if the Court concludes that it does have jurisdiction to hear this action, the USCP is entitled to summary judgment on the merits.  For one of the two categories of emails Plaintiff has requested—communications between the Capitol Police Board and the FBI, DOJ, and DHS—the USCP does not have a means to search the Board's emails.  And in any event, Plaintiff may request such emails by submitting a FOIA request to the three Executive Branch agencies at issue.  As for the remaining materials Plaintiff has requested, none are "public records" under the D.C. Circuit's governing test.  And even if they were, compelling reasons exist for the USCP to maintain the confidentiality of its internal correspondence surrounding the January 6 attack and its video surveillance footage from the insurrection itself.

### A.   The USCP does not possess or control the email repositories for the Capitol Police Board, and any responsive communications are in any event available through an alternative mechanism.

Plaintiff's second category of requested information is for "[e]mail communications of the Capitol Police Board with the Federal Bureau of Investigation, the U.S. Department of Justice, and the U.S. Department of Homeland Security concerning the security of the Capitol on January 6, 2021."  Joyce Decl. ¶ 3, Ex. A.  But the USCP does not have possess or have access to the email

---

[1] Notwithstanding Plaintiff's failure to identify—and name as a defendant—any public official owing some duty in their official capacity, should the Court find it necessary to evaluate the merits of Plaintiff's claims in order to determine whether sovereign immunity applies, it should, for the reasons discussed *infra*, nonetheless dispose of the Complaint on these threshold grounds.  *See, e.g.*, *WLF II*, 89 F.3d at 902 (evaluating merits of common law access claim to decide sovereign immunity question when "the question of jurisdiction merges with the question on the merits"); *Judicial Watch v. Schiff*, 474 F. Supp. 3d 305, 313-14 (D.D.C. 2020) (same), *aff'd* 998 F.3d 989 (D.C. Cir. 2021).

repositories for Capitol Police Board members, and is therefore not in position to reasonably search for records responsive to this category of materials.  As explained above, the Board is comprised of three officials who, while they oversee the USCP's execution of its mission in their capacity as Board members, are not employees, officials, or otherwise part of the USCP itself.  *See* Joyce Decl. ¶ 11.  Board members are not provided uscp.gov email addresses, and their email communications are not stored on the USCP's email servers.  *Id.*  Plaintiff plainly has no right to compel the USCP to produce records which the USCP does not possess and to which it has no access.  By analogy to the Freedom of Information Act, the USCP "need not produce records maintained by another federal government agency or obtain records from any other sources." *Callaway v. U.S. Dep't of Treasury*, 893 F. Supp. 2d 269, 275 (D.D.C. 2012); *cf. Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) (FOIA "only obligates [an agency] to provide access to those [documents] which it in fact has created and retained").

It is true that the Chief of the Capitol Police serves as an *ex officio* member of the Board, without voting privileges.  Joyce Decl. ¶¶ 11, 12.  In that capacity, however, the Chief has no authority to speak on behalf of the Board.  *Id.* ¶ 12.  The Chief is, moreover, appointed by, and serves at the pleasure of, the Board.  *See* 2 U.S.C. § 1971 ("The Capitol Police shall be headed by a Chief who shall be appointed by the Capitol Police Board and shall serve at the pleasure of the Board.").  Any email communications between the Chief and the FBI, DOJ, or DHS thus would not have been responsive to Plaintiff's request for email communications "of the Capitol Police Board." *Id.*, Ex. A.

Notwithstanding that Plaintiff lacks any legal right to these materials, the USCP has out of an abundance of caution searched for emails between the Chief (or Acting Chief) of Police and the three specified federal agencies from January 1 to January 10, 2021.  Joyce Decl. ¶ 12.  Of the very emails from that search that might reasonably be considered "concerning the security of the Capitol

on January 6, 2021," *see id.*, Ex. A, none are "public records," for the reasons set forth more fully below.  *Id.* ¶ 12.  Those emails are routine correspondence between the Chief and various law enforcement partners regarding Inauguration preparations, concerns and condolences for officer injuries and fatalities, personal correspondence about Chief Steven Sund's resignation and Acting Chief Pittman's elevation, and fencing.  *Id.*  None of these emails was intended to memorialize any official USCP action.  *Id.*; *see infra* Section II.B.

It is possible that the USCP might possess an email between a Capitol Police Board member and the FBI, DOJ, or DHS, if a USCP employee was copied on or forwarded such an email.  *See* Joyce Decl. ¶ 11.  But identifying any such emails would entail a broader, more burdensome search, one that might encompass the entire agency.  Such a burdensome search should not be required when Plaintiff may seek these records directly from the specified Executive agencies through the Freedom of Information Act.  As the D.C. Circuit has explained, where a statutory scheme, such as FOIA, provides an available mechanism for requesting the sought-after information, "[t]he appropriate device is a Freedom of Information Act request addressed to the relevant agency," rather than a request under the common law.  *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) (citing *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 605-06 (1978) (existence of statutory disclosure mechanism weighs against court-mandated disclosure)). In *El-Sayegh*, the D.C. Circuit rejected a common law right of access claim against the Judicial Branch, reasoning that the statutory mechanism for disclosure applicable to the Executive Branch (*i.e.*, FOIA) was the proper course.  So too here should the Court reject an attempted common law claim against the Legislative Branch when Congress has already supplied a remedy through FOIA. Because "FOIA provides an extensive statutory regime for [Plaintiff] to request the information [it] seek[s] . . . . [t]hat scheme preempts any preexisting common law right," and Plaintiff's claim cannot proceed with respect to this category of information.  *Ctr. for Nat'l Sec. Stud. v. Dep't of*

*Justice*, 331 F.3d 918, 936-37 (D.C. Cir. 2003).

**B.      None of the requested materials are "public records" subject to the common law right of access.**

Plaintiff's demand for certain emails of Capitol Police senior leadership and surveillance video footage from January 6 (Plaintiff's first and third categories of requested information) fails because those materials are not "public records" to which Plaintiff has any right. The D.C. Circuit has established a two-step process to govern whether the common law right of access applies: First, the court determines "whether the document sought is a 'public record.'" *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446, 1451 (D.C. Cir. 1994) (*WLF I*). If so, the court then "proceed[s] to balance the government's interest in keeping the document secret against the public's interest in disclosure." *Id.* at 1451-52. Any cognizable public interest in the document is thus relevant solely at the second step, and does not factor into the analysis of whether the document is a "public record" in the first place.

Plaintiff's requests here—for certain emails of the USCP Executive Team[2] and surveillance video footage gathered by the USCP for law enforcement purposes—fails to satisfy either step, and the asserted common law right of access therefore does not apply. Lacking any "right to demand disclosure of the requested" materials, the USCP is entitled to summary judgment on Plaintiff's claim. *Judicial Watch*, 474 F. Supp. 3d at 319.

*1.      Emails between the USCP Executive Team and the Capitol Police Board are not public records*

Plaintiff's first requested category—email communications between the USCP Executive Team and the Capitol Police Board concerning the security of the Capitol on January 6—does not

_____

[2] The USCP Executive Team—the subject of Plaintiff's first requested category—consists of the Chief of the Capitol Police; the Assistant Chief, Protective and Intelligence Operations; the Assistant Chief, Uniformed Operations; the Chief Administrative Officer; and the General Counsel. *See* Joyce Decl. ¶ 6.

consist of public records.  As explained in the Joyce Declaration, these emails were not created or

kept in order to memorialize any official USCP action or decision.  Joyce Decl. ¶ 8.  Indeed, when

USCP takes an official action or other decision of legal significance, it has established processes

for doing so that do not entail email correspondence.  *Id.* ¶ 8.   Rather, the emails at issue are the

stuff of everyday agency communication, albeit sent and received during an extraordinary period

surrounding the Capitol insurrection.   They include, for example, correspondence regarding

situational security updates, recommendations on security measures for the Capitol and members

of Congress, updates and recommendations on police personnel issues, scheduling for upcoming

USCP meetings and conference calls, draft documents and statements, and updates about news

media reports.  *Id.* ¶ 7.

In *WLF II*, the D.C. Circuit rejected the sweeping definition of "public records" for which

Plaintiff here implicitly advocates.  The court declined to adopt a definition of "public record" that

would "include almost every document recorded, generated, or produced by public officials

whether or not required by law to be made, maintained or kept on file."   89 F.3d at 904

(quoting *Higg-A-Rella, Inc. v. Cnty. of Essex*, 660 A.2d 1163, 1168 (1995) (quotation marks

omitted)).    Such a definition would "impose . . . the most demanding possible disclosure

obligation." *Id.* at 905.  Instead, the court adopted a narrower definition:  "a government document

created and kept for the purpose of memorializing or recording an official action, decision,

statement, or other matter of legal significance, broadly conceived." *Id.*  It specifically carved out

"documents that are preliminary, advisory, or, for one reason or another, do not eventuate in any

official action or decision being taken." *Id.*

The requested emails are not the sort of documents that are intentionally created to

"memorializ[e]" or "record[]" some official action by the USCP.  *Id.*  Indeed, the USCP has

determined that none of the emails in this category were created to memorialize or record some

official USCP action, nor have they been kept for that purpose.  Joyce Decl. ¶ 8.  Even if these emails eventually formed the basis for some future USCP action—a hypothetical Plaintiff has nowhere alleged—the D.C. Circuit's definition of "public record" does not "encompass the preliminary materials upon which an official relied in making a decision or other writings incidental to the decision itself."  *WLF II*, 89 F.3d at 905.  Defendant is aware of no precedent that would mandate the wholesale disclosure of the requested email correspondence from a law enforcement agency, and Defendant has located no court decision holding such emails to be public records subject to disclosure.  For this Court to conclude otherwise would institute "the most demanding possible disclosure obligation" that the D.C. Circuit rejected.  *Id.*

Even when confronted with materials that are far less preliminary or unofficial than the email correspondence at issue here, courts have found them outside the definition of "public records."  A subpoena issued by the House Permanent Select Committee on Intelligence is not a public record.  *Judicial Watch*, 474 F. Supp. 3d at 315-16, *aff'd on other grounds* 998 F.3d 989.  Nor are a sentencing advisory committee's memoranda on policy matters, drafts of sentencing guideline proposals, or letters on internal administrative matters.  *WLF II*, 89 F.3d at 900, 906.  The same goes for final investigative reports prepared by congressional staff for the House Appropriations Committee.  *Pentagen Techs. Int'l, Ltd. v. Comm. on Appropriations*, 20 F. Supp. 2d 41, 45 (D.D.C. 1998).  The requested email correspondence does not fall within the scope of a "public record" to which any common law right of access could apply, and Plaintiff's claim therefore fails on the merits.

2.     *USCP video footage from within the Capitol on January 6 is not a public record*

Plaintiff's third request, for nine hours of "all video footage from within the Capitol" on January 6, 2021, likewise falters at the first step of the D.C. Circuit's two-part test because the

USCP's surveillance video footage is not a "public record."  As an initial matter, the USCP is aware of no authority holding that law enforcement surveillance video footage should be considered a public record subject to mandatory disclosure.  Nor would such a conclusion make sense.  Raw surveillance footage by definition does not memorialize or record any official action, but instead simply provides a recording of *everything* that occurs within a camera system's view.  Moreover, longstanding USCP policy dictates that the USCP camera system, including footage recorded by it within the Capitol and sought by Plaintiff, is solely for national security and law enforcement purposes.  *See* Joyce Decl. ¶¶ 13-14 & Ex. C, USCP Directive 1000.002, *Retrieval of Archived Video* (Directive 1000.002).  Like many video surveillance systems, the USCP camera system is designed "to provide situational awareness to USCP personnel, supporting national security, and legitimate law enforcement purposes."  *See* Directive 1000.002 at 1-2.  It is not, and never has been, intended to record some official government action for the purpose of memorializing that action.

Accordingly, the USCP does not publicize any of its surveillance video footage, and what limited footage its policy does make available to approved individuals is on a tightly controlled application basis.  For example, a request for video footage from the USCP's camera system must be submitted through written application by a USCP employee for a specific law enforcement purpose, and be approved by either of two USCP Assistant Police Chiefs.  *See* Joyce Decl. ¶ 14; Directive 1000.002; Joyce Decl., Ex. D, Form CP-411.  Even when a request for footage is approved, the footage must be viewed within the presence of USCP personnel, or subject to strict control by the USCP.  *See* Joyce Decl. ¶¶ 14-15; *see also* Directive 1000.002 at 1 (advising that "[v]ideo footage received through an approved request should not be delivered, copied, or transmitted to anyone other than necessary parties (e.g., court, General Counsel) without approval from the COO").  In line with its Directive, the USCP has consistently taken a restrictive approach

to releasing video footage, including in cases that involve serious crimes or national security, such as the January 6 footage sought here by Plaintiff.  Joyce Decl. ¶ 15.

It is true that the USCP has made certain authorized disclosures of video footage from the Capitol on January 6 to Congress and to non-congressional entities, such as the FBI, the Washington D.C. Metropolitan Police Department, and federal prosecutors.  *Id.* ¶ 16.  Those disclosures, however, have all been in support of Congress and those other entities' pursuit of investigations into the events of January 6, whether for purposes of impeachment proceedings, oversight investigations, or criminal prosecutions.  To the extent that there have been any public releases of that footage, it has not been by the USCP.  *Id.* ¶ 17.

Because video footage from within the Capitol on January 6 is not a "public record," Plaintiff has no common law right of access to that material.

**C.      Even if Plaintiff had sought "public records," there are compelling reasons the requested materials should not be disclosed.**

Assuming *arguendo* that the requested materials are "public records," Plaintiff nonetheless has no right to access them because Plaintiff cannot show any public interest in disclosure that outweighs the USCP's countervailing interests against release.  Plaintiff in its Complaint does not allege with any particularity what the public interest in the requested material might be, choosing instead to rely on a conclusory assertion.  *See* Compl. ¶ 11 (bare allegation that "[t]he public interest in the requested communications and video footage outweighs Defendant's interest in keeping them secret").  The USCP would of course not deny that there is strong public interest in the events of January 6 generally, but it is "not sufficient for the plaintiffs to show [public] interest in only the general subject area of the request."  *ACLU of N. Cal. v. DOJ*, No. C 04-447 PJH, 2005 WL 588354, at *13 (N.D. Cal. Mar. 11, 2005) (FOIA case assessing applicability of Exemption 7(C)).  Plaintiff must instead articulate a public interest in the actual requested documents that

outweighs the need for confidentiality.  By analogy to the interest balancing that courts conduct

under the FOIA when considering requests for law enforcement records, "[t]he fact that [Plaintiff]

has provided evidence that there is some media interest in [the January 6 attack on the Capitol] as

an umbrella issue does not satisfy the requirement that [it] demonstrate interest in the specific

subject" of its request for USCP emails.  *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 355 F. Supp. 2d

98, 102 (D.D.C. 2004).

Even if a cognizable public interest could be derived from Plaintiff's conclusory allegation

in the Complaint, it is outweighed by the USCP's interests in maintaining confidentiality.

Plaintiff's request for the email correspondence of the USCP's Executive Team with the Capitol

Police Board covers internal communications between members of USCP leadership, members of

the Capitol Police Board, and congressional stakeholders.  *See* Joyce Decl. ¶ 7.  For the USCP to

function and properly execute its mission, its leadership must be able to communicate, including

by email, without fear or apprehension that those messages will be made public merely upon

request.  *See id.* ¶ 9.  This is especially so during rapidly unfolding, dangerous events such as the

January 6 attack on the Capitol.  *Id.*  Court-ordered disclosure of these emails would undoubtedly

chill those important communications.  Furthermore, the USCP's response to the events of January

6 is currently the subject of congressional inquiry by, among other bodies, the House Select

Committee to Investigate the January 6th Attack on the U.S. Capitol.  *See* H. Res. 503 (117th

Cong.) (June 30, 2021); *id.* § 3(1) (Select Committee's purposes include, *inter alia*, to investigate

"facts and causes relating to the preparedness and response of the United States Capitol Police").

And more broadly, the events of January 6 are the subjective of multiple concurrent criminal

investigations.  Releasing the requested email correspondence to the public could frustrate the

investigation of the House Select Committee or other congressional committees, and could also be

expected to compromise ongoing criminal proceedings against those who attacked the Capitol.

*See* Joyce Decl. ¶ 10.

USCP also has a strong interest in maintaining confidentiality of the requested security video footage.  First, that footage is likewise the subject of concurrent investigations by multiple investigative entities, *see id.* ¶ 16, and its disclosure to the public could jeopardize the integrity of those investigations.  Second, disclosure of the footage could also reveal the locations of USCP surveillance cameras, Capitol entry and exit points, and Members' office locations, as well as certain security techniques and methods employed by USCP on January 6.  *Id.* ¶¶ 18, 20.  Release of that information could enable or encourage prospective wrongdoers to commit future unauthorized actions against the Capitol complex.  *Id.*; *see also* Directive 1000.002 at 2 ("Retrieving, using, or duplicating archived video footage in cases not related to national security or significant law enforcement operations . . . could expose the location of [USCP's] CCTV cameras or identify [USCP's] surveillance tactics.  This presents a threat to national security, as making this information public could be utilized by a potential adversary.").  Third and finally, the Capitol Police Board has designated at least some of the footage requested to be "security information" whose public disclosure is prohibited by federal statute, and it may similarly designate additional footage in the future.  *See* Joyce Decl. ¶ 20; 2 U.S.C. § 1979.[3]

---

[3] Section 1979(b) provides, in pertinent part:

Notwithstanding any other provision of law, any security information in the possession of the Capitol Police may be released by the Capitol Police to another entity, including an individual, only if the Capitol Police Board determines in consultation with other appropriate law enforcement officials, experts in security preparedness, and appropriate committees of Congress, that the release of the security information will not compromise the security and safety of the Capitol buildings and grounds or any individual whose protection and safety is under the jurisdiction of the Capitol Police.

2 U.S.C. § 1979(b).

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Defendant U.S. Capitol Police on all of Plaintiff's claims.


Dated:  August 6, 2021                    Respectfully submitted,


                                          BRIAN M. BOYNTON
                                          Acting Assistant Attorney General

                                          JOHN R. GRIFFITHS
                                          Director
                                          Federal Programs Branch

                                          MARCIA BERMAN
                                          Assistant Director
                                          Federal Programs Branch

                                          */s/ M. Andrew Zee*
                                          M. ANDREW ZEE (CA Bar No. 272510)
                                          Attorney
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          450 Golden Gate Ave.
                                          San Francisco, CA 94102
                                          Tel: (415) 436-6646
                                          Fax: (415) 436-6632
                                          E-mail: m.andrew.zee@usdoj.gov

                                          *Counsel for Defendant*