# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

    Plaintiff,

v.

UNITED STATES CAPITOL POLICE,

    Defendant.

Case No. 1:21-cv-00401-KBJ

## DECLARATION OF JAMES W. JOYCE

I, James W. Joyce, declare as follows:

1.    I am a Senior Counsel in the Office of the General Counsel, General Law Division, for the U.S. Capitol Police (USCP or Department). In this position, I provide general legal advice and legal assistance on, among many other things, criminal matters, constitutional matters, appropriations and procurement matters, matters concerning tort claims, and the overall operations of the Department. I have worked for the USCP in the Office of the General Counsel since November 2004.

2.    As part of my duties, together with the USCP's Public Information Office, I oversee the USCP's responses to requests by members of the public for USCP information. Although the USCP is not subject to the Freedom of Information Act (FOIA) because it is part of the Legislative Branch, *see* 5 U.S.C. §§ 551(1)(A), 552(f)(1) (excluding the Legislative Branch from an "agency" subject to the requirements of FOIA), the USCP nonetheless occasionally receives FOIA and FOIA-like requests for incident reports, arrest reports, video footage, and other documents, records, and information. (The USCP also receives official requests for information from its oversight committees in Congress, the Capitol Police Board, and other official entities. I am not generally responsible for responding to such requests, and they are not the subject of this Declaration.)

1

3. By letter dated January 21, 2021, Plaintiff Judicial Watch submitted a request to USCP, which is attached to this Declaration as Exhibit A. Asserting a common law right of access to public records, Plaintiff requested three categories of information, as follows:

> 1. Email communications between the U.S. Capitol Police Executive Team and the Capitol Police Board concerning the security of the Capitol on January 6, 2021. The timeframe of this request is from January 1, 2021 through January 10, 2021.
>
> 2. Email communications of the Capitol Police Board with the Federal Bureau of Investigation, the U.S. Department of Justice, and the U.S. Department of Homeland Security concerning the security of the Capitol on January 6, 2021. The timeframe of this request is from January 1, 2021 through January 10, 2021.
>
> 3. All video footage from within the Capitol between 12pm and 9pm on January 6, 2021.

The request is the subject of the instant litigation, *Judicial Watch v. U.S. Capitol Police*, No. 21-cv-00401 (D.D.C.).

4. On behalf of the USCP, I responded to Plaintiff's request by email on February 11, 2021. The response, which is attached to this Declaration as Exhibit B, stated that the USCP declined to provide the requested information because they are not "public records."

5. This Declaration provides information broken down by each of the three categories of information requested, in support of the USCP's determination to decline to disclose any of the requested information.

**Category No. 1: Email communications between the USCP Executive Team and the Capitol Police Board**

6. The USCP conducted a search for emails between members of the USCP Executive Team (the Capitol Police Chief, the Assistant Chief of Police – Protective and Intelligence Operations, the Assistant Chief of Police – Uniformed Operations, the Chief Administrative Officer, and the General Counsel) and the Capitol Police Board (the House Sergeant at Arms, the Senate Sergeant at Arms, and the Architect of the Capitol) for the January 1 to January 10, 2021

2

time period.  Because the General Counsel is on the Executive Team, many of the internal USCP Executive Team communications involving the General Counsel tend to include privileged information. Because there were resignations from some of these positions during that period, the number of custodians searched was larger than the number of positions.  The USCP's search returned approximately 271 emails, the majority of which were duplicates of one another.

7. I reviewed these emails for responsiveness to Plaintiff's first requested category of information, and concluded that, although certain communications broadly concerned security of the Capitol on January 6, 2021, none of them constitute "public records"—even in the context of the case law that Plaintiff relies upon for its asserted common law right of access.  These emails instead consist of, for example, correspondence regarding situational security updates, recommendations on security measures for the Capitol and Members of Congress, updates and recommendations on police personnel issues, scheduling for upcoming USCP meetings and conference calls, draft documents and statements, and updates about news media reports.  None of these emails have been publicly disclosed.  These emails were in the nature of correspondence among the USCP's Executive Team with one or more members of the Capitol Police Board, and occasionally with congressional stakeholders before, during, and in the aftermath of the events of January 6, 2021.

8. None of the emails I reviewed were intended to memorialize or record any official action by the USCP.  Nor will any of these emails be kept for that purpose.  To the extent that the USCP takes official action, it has existing processes in place to create and keep official records of that action.  None of those existing processes to memorialize official USCP action consist of sending or receiving emails.

9. Were these emails to be publicly disclosed by order of this Court, I believe it would impair the USCP's ability to execute its mission of protecting the U.S. Capitol and the Congress. USCP personnel, including leadership on the Executive Team, depend on the confidentiality of their internal communications and their communications with the Capitol Police Board in order to express views and opinions and make recommendations that are candid and frank, and that may

differ from the ultimate course of action taken by the USCP.  Were these emails to be disclosed to the public, I believe it would chill USCP personnel from communicating as fully and candidly in the future as they would otherwise do in order to execute their security function.  Public disclosure of internal email communications that were never intended beyond their original audience could, in the future, impede the free flow of information within the USCP and between the USCP and the Capitol Police Board, during critical security incidents like the January 6, 2021 attack.  Public disclosure of these emails could also unduly reveal the methods, techniques, and responses that the USCP employs for Capitol security and during a violent event such as occurred on January 6.  Any disclosure of such emails, now or in the future, could compromise current and future security efforts by revealing those methods, techniques, and responses to individuals and groups that wish to disrupt, attack, or harm the Capitol or the Congress.

10. Public disclosure of these emails could also interfere with the multiple congressional and criminal investigations underway regarding the events of January 6.  I am aware of congressional investigations into those events by, among other congressional committees, the House Select Committee to Investigate the January 6th Attack on the U.S. Capitol, and of criminal investigations and prosecutions of individuals who participated in the attack on the Capitol.  Making public the internal communications of USCP leadership and the Capitol Police Board, now or in the future, could make subjects of those (or any future) investigations aware of confidential USCP information, and thereby impede efforts to investigate and, if necessary, prosecute or otherwise respond to criminal acts or other wrongdoing during the attack.  Even if the subject matter of these emails is not currently the subject of any investigation, it may become the subject of future inquiry and investigation.

## Category No. 2: Email communications of the Capitol Police Board with the FBI, DOJ, and DHS

11. The Capitol Police Board is comprised of the Sergeant at Arms of the U.S. House of Representatives, the Sergeant at Arms of the Senate, and the Architect of the Capitol.  These

three congressional officers are not employees, officials, or otherwise part of the USCP. The Capitol Police Chief is also an *ex officio*, non-voting member of the Board. Emails of the House Sergeant at Arms, the Senate Sergeant at Arms, and the Architect of the Capitol are not housed on the USCP's email servers, but such emails rather are kept on separate email servers to which USCP lacks access (for example, house.gov or senate.gov or aoc.gov). In addition, the House Sergeant at Arms, the Senate Sergeant at Arms, and the Architect of the Capitol are not provided uscp.gov email addresses. The USCP and its Office of Information Services do not have possession of, or access to, the emails of the three principals of Capitol Police Board, which would, if they exist, be responsive to Plaintiff's second requested category. Based on my understanding, it is theoretically possible that such emails may have included or been sent onward to USCP employees and then the USCP would have access to them, but a search to locate any such hypothetical emails would likely entail searching the emails of a large number of USCP employees, an unreasonably broad and burdensome search. Also based on my understanding, it would then require USCP personnel, none of which are dedicated full-time to responding to public records requests, to manually review all located emails for potential responsiveness to Plaintiff's request. To the extent any such emails were located, any portions of the email that did not involve communication between the Board and the specified agencies would then likely need to be withheld or redacted. This process would impose a substantial burden on the USCP, which, to reiterate, does not have personnel, other than myself, trained or allocated to respond to public records requests. Unlike the USCP's counterpart law enforcement agencies in the Executive Branch, which I understand have significant personnel and resources to implement their obligations under the FOIA, the USCP is not subject to the FOIA.

12.     While the USCP does have possession of emails of the Chief of the Capitol Police, the Chief is an *ex officio*, non-voting member of the Capitol Police Board who is not authorized to send or receive emails on behalf of the Board. Thus, insofar as the Chief communicated by email with the FBI, DOJ, or DHS concerning the security of the Capitol on January 6, those emails would not have been "of the Capitol Police Board" and therefore responsive to Plaintiff's second requested category of information. Notwithstanding the Chief's *ex officio*, non-voting role on the

Capitol Police Board, the USCP searched for emails from the Chief (or Acting Chief) to or from the FBI, DOJ, or DHS from January 1 to January 10, 2021. I reviewed approximately 214 emails located by that search, the majority of which were duplicates of one another. These emails primarily concern Inauguration preparations, concerns and condolences regarding officer injuries and fatalities, personal correspondence about Chief Steven Sund's resignation and Acting Chief Pittman's elevation, and fencing. Insofar as any of these emails could be considered to "concern[] the security of the Capitol on January 6," and therefore be responsive to the second requested category, they are not public records subject to disclosure. Moreover, none of these emails were intended or kept for the purpose of memorializing or recording any official USCP action.

### Category No. 3: Video footage from within the Capitol

13.     Plaintiff's third requested category is all video footage from within the Capitol between 12:00 p.m. and 9:00 p.m. on January 6, 2021. No Capitol Grounds security video could constitute "public records" under any circumstances—even in the context of the case law that Plaintiff relies upon for its asserted common law right of access. The USCP has an extensive system of cameras on the Capitol Grounds, which are part of a sophisticated closed circuit video (CCV) system. Such cameras are resident both inside and outside the buildings on Capitol Grounds including the U.S. Capitol itself. This CCV system provides the backbone of the security for the Capitol Grounds. The CCV system is monitored by sworn police officers 24-7 in the USCP Command Center and is relied upon to provide real time information regarding any incident occurring on the Grounds. Access to this USCP CCV system is strictly limited. Because the system is a closed circuit, access to the cameras only occurs from dedicated USCP workstations and monitors located in a handful of locations on Capitol Grounds. The USCP system is not "in the cloud" and may not be monitored or hacked by anyone not connected via a dedicated USCP workstation and monitor.

14.     The disclosure of any footage from these security cameras is strictly limited and subject to a policy that regulates the release of such footage. Per Department Directive 1000.002,

*Retrieval of Archived Video*, which is attached as Exhibit C to this Declaration, the release of *any* footage from the Department's CCV system must be approved by either of the two Assistant Chiefs of Police,[1] the Department's second highest sworn officer.  The Directive notes that, "[t]he Capitol Police Board [which oversees the USCP] directed that cameras would only be used for matters related to national security and legitimate law enforcement purposes (*e.g.*, serious crimes).  The [Assistant Chief of Police] is the sole authority for the approval of any and all requests for archived video footage."  The Directive goes on to note that, "[v]ideo footage received through an approved request shall not be delivered, copied, or transmitted to anyone other than necessary parties (*e.g.*, court, General Counsel) without approval from the [Assistant Chief of Police]."  There is a specific Department form, CP-411, attached as Exhibit D to this Declaration, which must be completed and signed by several officials, including either Assistant Chief of Police, before any camera footage can be released.

        15.     The USCP has consistently taken a restrictive view of releasing camera footage in all cases including those involving serious crimes or national security.  The USCP for example regularly denies providing video to civil plaintiffs who may have been involved in vehicular accidents on Capitol Grounds, except in rare cases involving serious injuries or death.  The USCP is also often asked for camera footage related to non-USCP administrative investigations.  The USCP generally does not provide that footage.  The Department will, however, allow investigators from agencies with which we regularly work, such as the Architect of the Capitol, to view such footage in the presence of a USCP employee.  Even a Member of Congress looking to view footage of our officers' interactions with his staff had to come to our office and to view the footage with our employees present.

        16.     In response to requests from congressional committees and law enforcement agencies, the USCP has provided security camera footage from the attempted insurrection at the

---

[1] The attached Directive 1000.002 predates the establishment of two Assistant Chief positions, and its reference to the "Chief of Operations" is now understood to refer to either of the two Assistant Chiefs, one for Uniformed Operations and one for Protective and Intelligence Operations.

Capitol on January 6 to the Senate Rules Committee, the Committee on House Administration, the Senate Homeland Security and Government Affairs Committee, the House Impeachment managers, the FBI, the U.S. Attorney's Office for the District of Columbia (USAO-DC), and the D.C. Metropolitan Police Department (MPD).  When the Department provided its CCV camera footage to the FBI, the USAO-DC, and MPD, it did so subject to several restrictions.  The footage was: (a) to remain in the legal control of the USCP; (b) not to be subject to the FOIA; and (c) to be returned to the USCP at the conclusion of any investigation.  These restrictions did not apply to any footage used as evidence or discovery as part of any prosecution of any criminal offense.

17. The Department has not provided its January 6 camera security footage to any entity other than those listed above.  Any public release of this footage, to the extent there has been one, is not because of any authorized release by the USCP.  (Note that the use of footage by the House Impeachment managers during the impeachment trial of former President Trump was permitted since, as a part of the Legislative Branch, the House Impeachment managers have a right to use footage from our cameras for impeachment processes similar to what would be shown in a court of law.)  It is important to note the wealth of publicly available footage that comes from non-USCP sources such as social media posts, footage recovered from indicted or arrested insurrectionists and footage from body worn cameras from other police departments that responded on January 6, 2021.  Notably, published footage that contains sound is not from the USCP, as our CCV system does not record sound.  Further, USCP officers do not wear body cameras, and thus any published body-worn camera footage is from other police departments.

18. The USCP strongly opposes the public release of any of its camera security footage from January 6, 2021.  The USCP is aware of efforts made before January 6, 2021, including by those who attacked the Capitol, to gather information regarding the interior of the U.S. Capitol, including references to the tunnels below Capitol Grounds and maps of the Capitol Building's layout, which information is generally not publicly available.[2]  Our concern is that providing to

---

[2] The Architect of the Capitol treats its "blueprints" of the Capitol as "security information" under 2 U.S.C. § 1979.

the public unfettered access to hours of extremely sensitive information, when a subset of individuals and groups have already shown a desire to interfere with the democratic process, will result in the layout of the U.S. Capitol being collected, exposed, and passed on to those who might wish to interfere with the security of the Capitol and Congress in the future.

19. Pursuant to 2 U.S.C. § 1979, USCP information designated as "security information" may only be released with the approval of the Capitol Police Board. Security information is defined as information that:

> (1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds; and
> (2) is obtained by, on behalf of, or concerning the Capitol Police Board, the Capitol Police, or any incident command relating to emergency response.

20. At this juncture, the USCP in consultation with the Capitol Police Board has designated some of the footage as "security information," as that footage relates to evacuation of Members of Congress from their respective chambers on January 6. The USCP cannot rule out the possibility that additional sections of footage or even all of the footage, will be deemed, in the aggregate, to constitute "security information" under 2 U.S.C. § 1979. The ability of members of the public to copy or disseminate such footage would provide prospective attackers or others with a clear picture of the interior of the Capitol, including entry and exit points, office locations, and the relation of crucial chambers and offices (such as the Speaker's Office or Majority Leader's Office) to other areas of the Capitol.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 6th day of August, at Washington, D.C.

*James W. Joyce*