# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JUDICIAL WATCH, INC.,** | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 21-401 (FYP) |
| **UNITED STATES CAPITOL POLICE,** | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

On January 21, 2021, Plaintiff Judicial Watch, Inc. ("Judicial Watch") submitted a request for records to Defendant United States Capitol Police ("USCP"). *See* ECF No. 1 (Complaint), ¶ 5. Plaintiff requested (1) email communications between the USCP Executive Team and the Capitol Police Board concerning the security of the Capitol on January 6, 2021; (2) email communications between the Capitol Police Board and the United States Department of Justice, the Federal Bureau of Investigation, and the United States Department of Homeland Security concerning the security of the Capitol on January 6, 2021; and (3) all video footage from within the Capitol between 12 p.m. and 6 p.m. on January 6, 2021. *Id.* After the USCP declined to provide the requested records, Plaintiff filed suit against the USCP, arguing that the denial violated Plaintiff's common law right of access to public records. *Id.*, ¶ 9. In its Complaint, Plaintiff requests that this Court (1) declare that Plaintiff is entitled to the records under the common law right of access; and (2) compel Defendant to provide the records to Plaintiff. *Id.*, ¶ 14.

On August 6, 2021, Defendant moved for summary judgment, arguing in relevant part

that the requested records do not qualify as public records; and that even if they were public records, there are compelling reasons why they should not be disclosed. *See generally* ECF No. 12 (Defendant's Motion for Summary Judgment). In response, Plaintiff filed a Motion for Discovery with respect to one category of records — the video footage of the events on January 6, 2021 — seeking evidence that allegedly is necessary to demonstrate that the requested footage is subject to the common law right of access. *See* ECF No. 14 (Plaintiff's Motion for Limited Discovery) at 4. In opposition, Defendant argues that the facts Plaintiff seeks to discover are not necessary to decide the issues in this litigation. *See* ECF No. 16 (Defendant's Opposition).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(d) permits a court to defer ruling on a motion for summary judgment and allow for discovery if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" *See* Fed. R. Civ. P. 56(d). To obtain relief under Rule 56(d), the "movant must (1) 'outline the particular facts [the party defending against summary judgment] intends to discover and describe why those facts are necessary to the litigation'; (2) explain why the party could not produce those facts in opposition to the pending summary-judgment motion; and (3) 'show [that] the information is in fact discoverable.'" *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (quoting *Convertino v. DOJ*, 684 F.3d 93, 99–100 (D.C. Cir. 2012)) (alterations in original).

"[T]he common law bestows upon the public a right of access to public records and documents." *Washington Legal Foundation v. U.S. Sentencing Comm'n (WLF II)*, 89 F.3d 897, 902 (D.C. Cir 1996). A public record "is a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance[.]" *Id.* at 905; *see also Washington Legal Foundation v. U.S. Sentencing*

2

*Comm'n (WLF I)*, 17 F.3d 1446, 1451 (D.C. Cir. 1994) (stating that the common law right of access "extends only to 'public records,' [and] not to every document contained in government files"). The D.C. Circuit employs a two-step test in determining whether a public right of access exists. *See WLF I*, 17 F.3d at 1451–52. "[A] court should first decide whether the document sought is a 'public record.' If the answer is yes, then the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure." *Id.* In balancing those interests, the government can "avoid disclosure if its 'specific interests favoring secrecy outweigh the general and specific interests favoring disclosure.'" *Id.* at 1451 (quoting *Mokhiber v. Davis*, 537 A.2d 1100, 1108 (D.C. 1988)).

## ANALYSIS

Plaintiff moves for limited discovery to seek evidence that the requested video footage is a public record subject to the common law right of access. *See* Pl. Mot. at 1; ECF No. 14-2 (Declaration of Michael Bekesha, Counsel for Judicial Watch), ¶ 9. Plaintiff argues that the requested video footage is not routine "raw surveillance footage" because the USCP has preserved it for future use. *Id*. at 5. In support of its argument, Plaintiff relies on the Declaration of Thomas A. DiBiase, USCP General Counsel, which states that the footage was preserved for "criminal prosecutions" and to "assist Congress and possibly other entities to understand how such a vast breach of security could occur." *See* Bekesha Decl., Ex. A, Declaration of Thomas A. DiBiase, ¶ 10.[1] Plaintiff essentially argues that the decision to preserve the video footage for

---

[1] Mr. DiBiase's Declaration was provided in *In re: Press and Public Access to Video Exhibits in the Capitol Riot Cases*, No. 21-mc-00046. *See* Pl. Mot. at 5. In his Declaration, Mr. DiBiase states:

> Soon after the events of January 6, the Department knew that its footage of the riots would be essential to both criminal prosecutions arising out of the events as well as to assist Congress and possibly other entities to understand how such a vast breach of security could occur. The Department immediately preserved all the footage from that date, starting at noon and continuing until 8:00 p.m. This

the stated reasons converted the surveillance video into a record that is "being 'kept for the purpose of memorializing or recording' a 'matter of legal significance[.]'" *See* Pl. Mot. at 6 (quoting *WLF II*, 89 F.3d at 902).

Plaintiff seeks discovery primarily to determine: (1) who made the decision to preserve the video footage; (2) how that decision was made; (3) why the video footage was preserved; and (4) whether the USCP intends to destroy the footage at some point. *Id.* at 5–6. Plaintiff also seeks discovery to "uncover evidence showing whether [there are] compelling reasons . . . why the requested video footage should not be disclosed." *Id.* at 6. On this point, Plaintiff notes that Defendant argues in its Motion for Summary Judgment that the video footage should be kept from the public because it contains information about sensitive security locations and security techniques. *Id.* While Plaintiff does not dispute that some of the footage may contain sensitive details, Plaintiff contends that not all of the over 14,000 hours of footage contains such information. *Id.* at 6–7. Consequently, Plaintiff seeks to discover (1) how many hours of the requested footage contain "security information;" (2) how many hours reveal the layout and weaknesses of the Capitol; and (3) how many hours have been shown publicly. *See* Bekesha Decl., ¶ 10.

Defendant argues that discovery is unnecessary because the evidence that Plaintiff seeks does not bear on whether the video footage is a "public record." *See* Def. Opp. at 1. In support of its argument, Defendant relies on evidence that the purpose of the USCP's closed video system is to record routine surveillance footage, which is normally is purged after 30 days. *Id.* at

---

footage was then provided to two distinct groups: Congressional entities and non-Congressional entities.

*See* DiBiase Decl., ¶ 10 (footnotes omitted).

5–6. Defendant also notes that it is the policy and practice of the USCP to strictly limit the disclosure of the surveillance footage, including providing the footage only in cases involving serious crimes or national security, and only to law enforcement agencies. *Id.* at 5; ECF 12-3 (Declaration of James W. Joyce, Senior Counsel for USCP), ¶¶ 13–15.[2]  Based on this evidence, Defendant argues that the footage was not created "for the purpose of memorializing" a matter of legal significance. *See* Def. Opp. at 6.  Defendant also points to the DiBiase Declaration, which explicitly states that the footage from January 6, 2021, is being preserved for use in criminal prosecutions and congressional investigations. *See* DiBiase Decl., ¶ 10.  Defendant argues that these statements "allow[] no room for the suggestion" that the footage was kept and preserved for the purpose of memorializing a matter of legal significance, and there is therefore no need for additional discovery on the issue. *See* Def. Opp. at 6.  According to Defendant, the D.C. Circuit's test of whether a record is "public" looks to the purpose for which a record was created, not how the information is treated after the government creates it. *Id.* at 6–7 (citing *WLF II*, 89 F.3d at 905).  Thus, Defendant reasons, Plaintiff's theory that subsequent preservation of video footage can convert such footage into a public record is unsupportable and would "gut" the

---

[2]  The Joyce Declaration states that "[i]n response to requests from congressional committees and law enforcement agencies, the USCP has provided security camera footage from the attempted insurrection at the Capitol on January 6" to various congressional committees and law-enforcement agencies. *See* Joyce Decl., ¶ 16. The Joyce Declaration also states: "The USCP has an extensive system of cameras on the Capitol Grounds, which are part of a sophisticated closed circuit video (CCV) system. . . . Access to this USCP CCV system is strictly limited." *Id.*, ¶ 13.  The Declaration further states:

> The disclosure of any footage from these security cameras is strictly limited and subject to a policy that regulates the release of such footage. . . . The [Department] Directive notes that "[t]he Capitol Police Board . . . directed that cameras would only be used for matters related to national security and legitimate law enforcement purposes (*e.g.*, serious crimes)." . . . The USCP has consistently taken a restrictive view of releasing camera footage in all cases including those involving serious crimes or national security.

*Id.*, ¶¶ 14–15 (quoting ECF No. 12-5, Ex. C (Department Directive 1000.002)).

public records test.  *Id.* at 7.  Defendant further contends that Plaintiff does not need information about the number of hours of footage to argue that the public interest in disclosure outweighs the government's interest in secrecy.  *Id.*

Plaintiff cites no precedent for granting limited discovery under the present circumstances.  The D.C. Circuit has explained that the district court can decide a claim under the common law right of public access when it can "familiarize itself with the documents at issue."  *WLF I*, 17 F.3d at 1452; *see also id.* (explaining that at most, district court should require government to submit a *Vaughn* index to determine whether requested materials are "public records").  Here, the nature of the video footage is not in dispute:  Defendant has already provided evidence explaining why the footage was created, and why it was kept and preserved.  *See* Joyce Decl., ¶¶ 13–15 (noting that video is part of routine surveillance footage); DiBiase Decl., ¶ 10 (explaining that footage was preserved for use in criminal prosecutions and congressional investigations).

With respect to the issue of whether the video footage is a public record, the requested discovery is not essential for Plaintiff to argue that routine surveillance video footage that originally did not fit the definition of "public record" became a public record when the USCP preserved the footage so that it could be utilized in criminal prosecutions and congressional investigations.  *See* Pl. Mot. at 4–5; Def. Opp. at 6–7.  To make the posited argument, it is not necessary to know who made the decision to preserve the video, how the decision was made, and whether there are plans to destroy the video footage in the future.  To be sure, the reason why the decision was made is relevant, but that is already known.  The Court finds that there is sufficient information for it to "familiarize itself with the documents" and make an informed decision at the summary judgment stage, and that Plaintiff has not demonstrated that limited discovery is

"essential" to justify its opposition to the pending Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(d); *WLF I*, 17 F.3d at 1452.

With respect to Plaintiff's request for discovery to support its argument that the public's interest in disclosure outweighs the interest in privacy, Plaintiff argues only that not all 14,000 hours of video footage contain secure and sensitive information. *See* Pl. Mot. at 6–7. This argument can be made without access to additional facts. Plaintiff does not need to know the specific number of hours of footage that contain sensitive information to argue that any footage lacking such information should be disclosed. Therefore, Plaintiff again fails to establish that the requested discovery is essential or necessary to litigate the Motion for Summary Judgment. *See Jeffries*, 965 F.3d at 855; Fed. R. Civ. P. 56(d).

## CONCLUSION

For the foregoing reasons, limited discovery is not necessary for the parties to litigate the pending Motion for Summary Judgment, and the Court denies Plaintiff's Motion for Discovery. A separate Order will issue this day.

Florence Y. Pan
United States District Judge

Date:   November 3, 2021