**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-0401 (FYP) |
| | ) | |
| U.S. CAPITOL POLICE, | ) | |
| | ) | |
| Defendant. | ) | |

---

<u>**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff Judicial Watch, Inc., by counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully submits this cross-motion for summary judgment.  The reasons for this motion are set forth in the accompanying Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment, attached exhibit, and Statement of Material Facts as to Which There is No Genuine Issue.

Respectfully submitted,

JUDICIAL WATCH, INC.

/s/  *James F. Peterson*
James F. Peterson
DC Bar No. 450171
425 Third Street, S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5175
Email:  jpeterson@judicialwatch.org

*Counsel for Plaintiff*

January 21, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                        )
JUDICIAL WATCH, INC.,                   )
                                                        )
                      Plaintiff,               )
                                                        )
            v.                                       )          Case No. 1:21-cv-0401 (FYP)
                                                        )
U.S. CAPITOL POLICE,                      )
                                                        )
                      Defendant.            )
_____)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN
SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel, respectfully submits this memorandum of

points and authorities in opposition to the Motion for Summary Judgment of Defendant U.S.

Capitol Police (ECF No. 12) and in support of Plaintiff's Cross Motion for Summary Judgment:

**I.      Introduction.**

This case concerns whether the public has a right of access to records about what Speaker

of the U.S. House of Representatives Nancy Pelosi has described as "one of the darkest days in

our nation's history," "an attack on our very democracy[,]" and "an attack on the peaceful

transfer of power."   Speaker Pelosi also has stated, "It is imperative that we find the truth of that

day and ensure that such an assault on our Capitol and Democracy cannot ever again happen."

To find out the truth about what took place at the U.S. Capitol on January 6, 2021 and to

understand how Defendant United States Capitol Police ("USCP") and other government entities

responded on that day, Plaintiff Judicial Watch requested access to certain video recordings and

communications.  Because USCP is not subject to the Freedom of Information Act, Plaintiff

submitted its request pursuant to the common law right of access.  USCP denied Plaintiff's

request and this litigation commenced.

## II.    Procedural History.

Pursuant to the common law right of access, on January 21, 2021, Plaintiff submitted a

request to USCP for access to:

A.    Email communications between the U.S. Capitol Police
Executive Team and the Capitol Police Board concerning the
security of the Capitol on January 6, 2021.  The timeframe of
this request is from January 1, 2021 through January 10, 2021.

B.    Email communications of the Capitol Police Board with the
Federal Bureau of Investigation, the U.S. Department of
Justice, and the U.S. Department of Homeland Security
concerning the security of the Capitol on January 6, 2021.  The
timeframe of this request is from January 1, 2021 through
January 10, 2021.

C.    All video footage from within the Capitol between 12 p.m. and
9 p.m. on January 6, 2021.

*See* Exhibit A to USCP's Motion for Summary Judgment (ECF No. 12-4).

USCP moved for summary judgment based on three arguments.  See generally

Memorandum in Support of Defendant's Motion for Summary Judgment (ECF No. 12-2).  First,

USCP asserts sovereign immunity bars this action.  *Id*. at 5-6.  Second, it argues the requested

records are not public records subject to the common law right of access.  *Id*. at 9-13.  Third,

USCP claims that, even if the records are public records, there are compelling reasons why they

should not be disclosed.  *Id*. at 13-15.

In order to assist in resolution of this matter, Plaintiff moved for discovery of additional

facts under Rule 56(d).  The Court subsequently ruled that these additional facts were not

necessary to resolve this matter.  Mem. Op. (ECF No. 18).

III.    **Argument**

A.    **Sovereign Immunity Is Not a Bar to this Lawsuit.**

USCP's initial argument is that this lawsuit is precluded by sovereign immunity.  USCP's Mem. at 5.  This claim fails, as Plaintiff's complaint specifically seeks mandamus relief under 28 U.S.C. § 1361.  *See* Compl. at 1, 3.  In *Washington Legal Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) ("*WLF II*"), the D.C. Circuit affirmed that "[i]f a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity," "no separate waiver of sovereign immunity is needed."  *WLF II*, 89 F.3d at 901 (citing *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996)).  This is the "*Larson-Dugan* exception" set forth in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949) and *Dugan v. Rank*, 372 U.S. 609, 621-22 (1963).  Plaintiff has more than adequately pled that USCP, through its officers, has violated the duty to release the requested records.  28 U.S.C. § 1361 (mandamus relief against agencies).  And because this "question of jurisdiction merges with the question on the merits" (*WLF II* at 902), sovereign immunity does not prevent this case from moving forward.  Notably, USCP concedes that the question of sovereign immunity merges with the merits of Plaintiff's claim.  *Id.* at 6, fn. 1.

Recently, a similar claim of sovereign immunity was rejected by this Court.  *See Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305 (D.D.C. 2020), *aff'd on other grounds*, 998 F.3d 989 (D.C. Cir. 2021).  As this Court explained, "[s]hould the common-law right of access apply to the requested records, then HPSCI's exercise of discretion (upon majority vote of Committee members) whether to release those records to plaintiff would be cabined accordingly by the legal duty or obligation to fulfill plaintiff's request."  *Id.* at 312-13.  In this case, as the common law

requires USCP to disclose the requested records, its discretion as whether to release the records is similarly controlled by its legal duty to comply with Plaintiff's request.

### B.     The Common Law Right of Access.

"In 'the courts of this country'—including the federal courts—the common law bestows upon the public a right of access to public records and documents." *WLF II*, 89 F.3d 897, 902 (D.C. Cir. 1996) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  In *Nixon*, "the Supreme Court was unequivocal in stating that there is a federal common law right of access 'to inspect and copy public records and documents.'" *Id*. (quoting *Nixon*, 435 U.S. at 597). "[T]he general rule is that all three branches of government, legislative, executive, and judicial, are subject to the common law right." *Id*. at 903 (quoting *Schwartz v. U.S. Dep't of Just.*, 435 F. Supp. 1203, 1203 (D.D.C. 1977)). The right of access is "a precious common law right . . . that predates the Constitution itself." *United States v. Mitchell*, 551 F.2d 1252, 1260 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978).

The Court of Appeals for this circuit has recognized that "openness in government has always been thought crucial to ensuring that the people remain in control of their government." *In re Sealed Case*, 121 F.3d 729, 749 (D.C. Cir. 1997).  "Neither our elected nor our appointed representatives may abridge the free flow of information simply to protect their own activities from public scrutiny.  An official policy of secrecy must be supported by some legitimate justification that serves the interest of the public office." *Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cty.*, 478 U.S. 1, 19 (1986) (Stevens, J., dissenting).  In the analogous Freedom of Information Act (FOIA) context, the United States Supreme Court has made clear that citizens "know[ing] 'what their Government is up to' . . . [is] a structural necessity in a real democracy."

*Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171-72 (2004) (quoting *U.S. Dep't of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  Hence, under the common law right of access, there is a "strong presumption in favor of public access" to records. *Leopold v. United States*, 964 F.3d 1121, 1127 D.C. Cir. 2020) (common law right of access to judicial records).

      **C.**    **The Common Law Right of Access Applies to the Requested Records.**

      Whether a record "must be disclosed pursuant to the common law right of access involves a two-step inquiry."  *WLF II* at 902 (D.C. Cir. 1996).  First, a court must decide whether the records are public records, which the D.C. Circuit has defined as "government document[s] created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived."  *Id*. at 905.  Second, if the records are public records, a court must conclude if "the public's interest in disclosure" outweighs the "government's interest in keeping the document secret."  *Id*. at 902.

      **1.**    **The Requested Video Footage Is a Public Record.**

      The extraordinary video footage of January 6 fits comfortably within the definition of a public record.  USCP claims the video footage is nothing more than routine "raw surveillance footage."  USCP's Mem. at 12.  In support of that proposition, USCP relies on the Declaration of James W. Joyce.  *See generally* Declaration of James W. Joyce (ECF No. 12-3).  Although Joyce testifies generally about video recordings from the USCP closed circuit video system (Joyce Decl. at ¶¶ 13-15), he does not provide any specific evidence about the creation, preservation, and use (or future use) of the requested video footage.  In fact, most of the declaration concerning the requested video footage simply describes why USCP opposes the public release of it.  Joyce Decl. at ¶¶ 16-20.

In an unrelated matter, USCP's General Counsel provides more relevant information concerning the requested video footage.  Declaration of Thomas A. DiBiase, *In re: Press and Public Access to Video Exhibits in the Capitol Riot Cases*, Case No. 21-46-BAH, attached hereto as Exhibit A.  In that declaration, DiBiase testifies:

> Soon after the events of January 6, the Department knew that its footage of the riots would be essential to both the criminal prosecutions arising out of the events as well as to assist Congress and possibly other entities to understand how such a vast breach of security could occur.  The Department immediately preserved all the footage from that date, starting at noon and continuing until 8:00 p.m.

DiBiase Decl. at ¶ 10.  In addition, DiBiase states, "Without affirmative preservation, all Department footage is automatically purged within 30 days."  *Id*. at ¶ 10, fn. 1.

Contrary to Joyce's testimony, USCP is not treating the requested video footage as routine "raw surveillance footage."  Unlike routine footage, the requested video footage is being indefinitely preserved.  Unlike routine footage, USCP believes the requested video footage will be used in various capacities in the future.  Hence, the requested video footage is a public record because it is being "kept for the purpose of memorializing or recording" a "matter of legal significance, broadly conceived."  *WLF II*, 89 F.3d at 902.[1]

In his declaration, Joyce argues that the requested video footage should be kept from the public because disclosure of the footage would "result in the layout, vulnerabilities, and security weaknesses of the U.S. Capitol being collected, exposed and passed on to those who might wish to attack the Capitol again."  Joyce Decl. at ¶ 18.  In addition, Joyce states that some of the requested video footage has been designated "security information."  Id. at ¶ 20.  Plaintiff does

---

[1]      Plaintiff is not contending that all raw surveillance video footage falls within the definition of a public record.  The fact that the requested video footage is being treated differently than all other footage demonstrates that the requested video footage is a public record subject to the common law right of access.

not dispute that some of the requested video footage may contain sensitive information. Joyce's Declaration, however, fails to provide any evidence about how many hours of the requested video footage contain such information or why those portions cannot be segregated from the other portions of the video. Nor does Joyce's Declaration identify how many portions of video footage already may been shown publicly or used in court proceedings. *Id*. But USCP concedes it already has released portions to multiple entities for a wide range of purposes. USCP's Mem. at 13.

A similar non-specific claim as to purported security risks of release of January 6 video footage already has been rejected by this Court:

> The government does not explain how the information it seeks to protect could not already be obtained by, for example, reviewing already-public videos taken inside the Capitol, and the government does not articulate a particular threat stemming from the release of these particular videos. As petitioners persuasively argue, the asserted security risk is undercut by the already extensive release of CCV footage from the Capitol.

*United States v. Torrens*, Case No. 21-cr-204 (BAH), 2021 U.S. Dist. LEXIS 174997, 2021 WL 4192048 at *14 (D.D.C. Sep't 15, 2021). Judge Howell further noted how, like here:

> [T]he government fails to explain how knowledge regarding the "perspectives and capabilities of the cameras" . . . would provide information that would compromise the security of the building, or how the video exhibits would disclose "police tactics and capabilities" . . . and compromise Capitol security. Petitioners observe that a vast amount of released footage—including 50 videos captured on body-worn cameras—depict officers' actions during the January 6 storming of the U.S. Capitol . . . and the government has not explained how the police tactics and capabilities depicted in these videos might differ from those already released.

*Id. See also In re Application for Access to Video Exhibits*, No. 21-mc-90 (RC), 2021 U.S. Dist. LEXIS 233103 (Dec. 6, 2021) (granting access to video and audio exhibits); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841 (D.D.C. Mar. 17, 2021) (Howell, C.J.) (granting access to video exhibits).

Far from routine surveillance footage, the requested video footage is a unique and critical record of an extraordinary moment in our history.  USCP recognizes this as they preserved the footage because of its undisputed legal and historical significance.  It is a public record.  At least significant portions of it can and should be released.

### 2.      Release of the Video Footage Is in the Public Interest.

The extraordinary public interest in release of the requested video footage outweighs the interests articulated by USCP.  On January 6, 2021, while the U.S. Congress was convened at the seat of our nation's democracy, hundreds of rioters "took over the United States Capitol; caused the Vice President of the United States, the Congress, and their staffs to flee the Senate and House Chambers; engaged in violent attacks on law enforcement officers charged with protecting the Capitol; and delayed the solemn process of certifying a presidential election." *United States v. Cua*, No. 21-107 (RDM), 2021 U.S. Dist. LEXIS 44293, 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021).  As Judge Moss has articulated, "[t]his was a singular and chilling event in U.S. history, raising legitimate concern about the security—not only of the Capitol building—but of our democracy itself."  *Id.*

In order to fully understand such an event, the significance of video footage is apparent. *See e.g.,* "The Law Enforcement Experience on January 6th: Hearing Before the Select Committee to Investigate the January 6th Attack on the United States Capitol," 117th Cong. (2021) (Chairman Bennie G. Thompson: "[J]ust describing that attack doesn't come close to capturing what actually took place that day.  So we're going to see some of what our witnesses saw on January 6th. Let's see the video please.").  As this Court has said, "release of videos for the public to see for itself promotes the underlying goals of the common law right of 'produc[ing] an informed and enlightened public opinion' and 'assur[ing] confidence in judicial

8

remedies.'" *Munchel*, 2021 U.S. Dist. LEXIS 194604, 2021 WL 4709745, at *4 (quoting *In re Leopold*, 964 F.3d at 1127).   The extraordinary public interest outweighs any conceivable interest of USCP in keeping the videos secret.

### 3.   At Least Some of the Requested Communications Are Public Records.

Plaintiff also has requested certain email communications of the USCP during a very narrow timeframe.  For substantially the same reasons set forth above, at least some of these communications likely have been memorialized due to the extraordinary nature of the January 6 events and therefore constitute public records.  Since USCP has not provided an itemized breakdown of the responsive emails (equivalent to a *Vaughn* Index), Plaintiff cannot yet evaluate which of these emails are public records and should be released.  In such a situation, "[t]he court should assess separately each category of documents requested to determine whether part or all of that category might be composed of public records.  If there is any legitimate question as to any or all of the categories, then the court should order a *Vaughn* index to evaluate the individual documents within these categories." *Washington Legal Found. v. United States Sentencing Comm'n*, 17 F.3d 1446, 1452 (D.C. Cir. 1994).  USCP should be ordered to provide an index of the responsive email communications.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment and grant Plaintiff's cross motion.

January 21, 2022

Respectfully submitted,
JUDICIAL WATCH, INC.
/s/  *James F. Peterson*
James F. Peterson, DC Bar No. 450171
425 Third Street, S.W., Suite 800
Washington, DC 20024, Tel: (202) 646-5175
Email:  jpeterson@judicialwatch.org
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                           )
JUDICIAL WATCH, INC.,                      )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )        Case No. 1:21-cv-0401 (FYP)
                                           )
U.S. CAPITOL POLICE,                       )
                                           )
                    Defendant.             )
_____)


**PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF**
**MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE AND**
**PLAINTIFF'S FURTHER STATEMENT OF MATERIAL FACTS**

      Plaintiff, by counsel and pursuant to Local Civil Rule 7.1(h), respectfully submits this response to Defendants' statement of material facts as to which there is no genuine dispute and statement of undisputed material facts in support of its cross-motion for summary judgment:

      1. The U.S. Capitol Police (USCP) is a law enforcement agency and is part of the Legislative Branch. Joyce Decl. ¶ 2; Compl. ¶ 4, ECF No. 1.

      **Response:**

      Undisputed.

      2. By letter dated January 21, 2021, Plaintiff submitted to the USCP a request asserting a common law right of access to public records and seeking three categories of information. Joyce Decl. ¶ 3 & Ex. A.

      **Response:**

      Undisputed.

      3. By email dated February 11, 2021, the USCP responded to Plaintiff's request by declining to provide the requested information. The USCP's response noted that the requested categories of information were not "public records." Joyce Decl. ¶ 4 & Ex. B. .

      **Response:**

      Undisputed that an email as described was sent by USCP.

1

4. The Capitol Police Board consists of the House Sergeant at Arms, the Senate Sergeant at Arms, and the Architect of the Capitol. Joyce Decl. ¶¶ 6, 11.

**Response:**

Undisputed.

5. The Chief of the Capitol Police is an ex officio, non-voting member of the Capitol Police Board, and is not authorized to speak on behalf of the Board. Joyce Decl. ¶¶ 11, 12.

**Response:**

Undisputed.

6. The USCP Executive Team consists of the Chief of the Capitol Police, the Assistant Chief of Police – Protective and Intelligence Operations, the Assistant Chief of Police – Uniformed Operations, the Chief Administrative Officer, and the General Counsel. Joyce Decl. ¶ 6.

**Response:**

Undisputed.

7. The emails of the principal, voting members of the Capitol Police Board are not maintained in email servers to which the USCP has access. Joyce Decl. ¶ 11.

**Response:**

Plaintiff lacks knowledge as to the accuracy of this statement.

8. None of the emails located by the USCP in response to Plaintiff's first requested category of information were created or kept to memorialize or record any official action by the USCP. Joyce Decl. ¶¶ 7, 8.

**Response:**

Disputed, as the statement contains argument and a legal conclusion which should be

disregarded by the Court.

9. The emails that the USCP located that are responsive to Plaintiff's first requested category of information include correspondence regarding situational security updates, recommendations on security measures for the Capitol and Members of Congress, updates and

recommendations on police personnel issues, scheduling for upcoming USCP meetings and conference calls, draft documents and statements, and updates about news media reports. Joyce Decl. ¶ 7.

**<u>Response:</u>**

Plaintiff lacks knowledge as to the accuracy of this statement.

10. None of the emails located by the USCP in response to Plaintiff's second requested category of information were created or kept to memorialize or record any official action by the USCP. Joyce Decl. ¶ 12.

**<u>Response:</u>**

Disputed, as the statement contains argument and a legal conclusion which should be

disregarded by the Court.

11. The emails that the USCP located in response to Plaintiff's second requested category of information, insofar as they concern the security of the Capitol on January 6 at all, primarily concern Inauguration preparations, concerns and condolences regarding officer injuries and fatalities, personal correspondence about Chief Steven Sund's resignation and Acting Chief Pittman's elevation, and fencing. Joyce Decl. ¶ 12.

**<u>Response:</u>**

Plaintiff lacks knowledge as to the accuracy of this statement.

12. When the USCP takes an official action, it has existing processes in place to memorialize that action that do not consist of sending or receiving emails. Joyce Decl. ¶ 8.

**<u>Response:</u>**

Plaintiff disputes the relevance of this statement, but lacks knowledge as to its accuracy.

13. The USCP's camera security system, including footage recorded by it within the Capitol and sought by Plaintiff, is solely for national security and law enforcement purposes. Joyce Decl. ¶ 14.

**<u>Response:</u>**

Disputed, to extent that the camera security system could be used for purposes other than

those intended.

14. Access to video footage from the USCP's camera security system is limited to narrow circumstances and strictly controlled by USCP policy. Joyce Decl. ¶¶ 14-15 & Exs. C, D.

**Response:**

Plaintiff lacks knowledge as to the accuracy of this statement generally, but disputes its relevance to the unique circumstances relating to the events of January 6, 2021 and the subsequent use of the video footage.

15. The USCP has not made any public disclosures of video footage from January 6 from its camera security system. Joyce Decl. ¶ 17.

**Response:**

Plaintiff lacks knowledge as to accuracy of this statement, but disputes its relevance as USCP has made video footage available to others, including for use in court proceedings, who may have made the footage public.

16. There are currently pending criminal investigations and prosecutions of individuals involved in the events at the U.S. Capitol on January 6, 2021. Joyce Decl. ¶¶ 10, 16.

**Response:**

Undisputed.

17. There are currently pending congressional investigations into the events at the U.S. Capitol on January 6, 2021. Joyce Decl. ¶¶ 10, 16.

**Response:**

Undisputed.

18. The USCP has strong interests in maintaining the confidentiality of the requested email correspondence, which include enabling the free flow of information among USCP officials and between those officials and the Capitol Police Board and congressional stakeholders; ensuring that the USCP's security methods, techniques, and responses during an incident such as January 6 are not revealed to the public; and preserving the integrity of ongoing congressional and criminal investigations. Joyce Decl. ¶¶ 9-10.

**Response:**

4

Undisputed that USCP has some interests as described in this statement.  Plaintiff disputes that these interests outweigh the significant public interest in release of the requested records.

19. The USCP has strong interests in maintaining the confidentiality of the requested video footage, which include adhering to its strict policy limiting disclosure of any video footage to narrowly prescribed circumstances; ensuring that certain sensitive security details about the layout of the Capitol are not revealed to the public; and preserving the integrity of ongoing congressional and criminal investigations. Joyce Decl. ¶¶ 14-15, 18, 20.

**Response:**

Undisputed that USCP has some interests as described in this statement.  Plaintiff disputes that these interests outweigh the significant public interest in release of the requested records.

**PLAINTIFF'S FURTHER STATEMENT OF FACTS IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

1.      The requested video footage depicts events of extraordinary public interest.

2.      The requested communications relate to events of extraordinary public interest.

Respectfully submitted,

JUDICIAL WATCH, INC.

/s/  *James F. Peterson*
James F. Peterson
DC Bar No. 450171
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5175
Fax:  (202) 646-5199
Email:  jpeterson@judicialwatch.org

*Counsel for Plaintiff*

January 21, 2022