UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

    Plaintiff,

v.

UNITED STATES CAPITOL POLICE,

    Defendant.

Case No. 1:21-cv-00401-FYP

**COMBINED OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**INTRODUCTION** ............................................................................................................................... 1

**ARGUMENT** ..................................................................................................................................... 2

    I.    SOVEREIGN IMMUNITY BARS THIS ACTION ............................................................. 2

    II.   PLAINTIFF'S CLAIMS LACK MERIT ............................................................................. 4

        A.  There is no basis to order disclosure of the USCP's security camera footage from within the Capitol on January 6 ................................................................................. 4

        B.  There is no basis to order disclosure of the requested email communications of USCP leadership ........................................................................................................ 7

**CONCLUSION** ................................................................................................................................ 8

## TABLE OF AUTHORITIES

**Cases**

*Alabama Rural Fire Ins. Co. v. Naylor*,
 530 F.2d 1221 (5th Cir. 1976) ................................................................................................ 3

*In Re: Application for Access to Video Exhibits*,
 2021 WL 5769379 (D.D.C. 2021) ........................................................................................... 7

*In re Leopold*,
 964 F.3d 1121 (D.C. Cir. 2020) ............................................................................................... 7

*Judicial Watch v. Schiff*,
 474 F. Supp. 3d 305 (D.D.C. 2020) ......................................................................................... 3

*Larson v. Domestic & Foreign Com. Corp.*,
 337 U.S. 682 (1949) ................................................................................................................ 3

*Liberation News Serv. v. Eastland*,
 426 F.2d 1379 (2d Cir.1970) ................................................................................................... 2

*Locke v. Warren*,
 --- F. Supp. 3d ---, No. 19-61056-CIV, 2020 WL 2763890 (S.D. Fla. 2020) ........................... 3

*Trackwell v. United States Gov't*,
 472 F.3d 1242 (10th Cir. 2007) ............................................................................................... 2

*United States v. Choi*,
 818 F. Supp. 2d 79 (D.D.C. 2011) ........................................................................................... 2

*United States v. Jackson*,
 2021 WL 1026127 (D.D.C. 2021) ........................................................................................... 7

*United States v. Torrens*,
 --- F. Supp. 3d ---, 2021 WL 4192048 (D.D.C. 2021) ........................................................ 6, 7

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
 17 F.3d 1446 (D.C. Cir. 1994) ................................................................................................. 8

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
 89 F.3d 897 (D.C. Cir. 1996) .......................................................................................... 2, 4, 5

*Wilkins v. Jackson*,
 750 F. Supp. 2d 160 (D.D.C. 2010) ......................................................................................... 8

**Statutes**

2 U.S.C § 1979 ................................................................................................................................ 6

28 U.S.C. § 1361 ................................................................................................................. 2

**INTRODUCTION**

Plaintiff's attempt to force the disclosure thousands of hours of security camera video footage from the January 6, 2021 insurrection attempt at the Capitol, along with email communications of the U.S. Capitol Police's leadership and Board members, should be rejected. Even if Plaintiff's claims did not suffer from threshold jurisdictional deficiencies, the common law right of access on which it relies does not entitle it to obtain these sorts of materials. Plaintiff's own assessment of the importance of the USCP's raw surveillance footage from January 6—no matter whether accurate or not—is not sufficient to render that footage a "public record" under the relevant test, which asks whether the document was created and kept for the purpose of memorializing or recording official action. Nor did the footage automatically became a public record when the USCP decided to preserve it or provide it to other government agencies. Meanwhile, it is true that this Court has, in certain January 6 criminal cases, deemed short, criminal-defendant-specific excerpts from the USCP's security footage be *judicial* records because they were considered by the courts in those proceedings. Such rulings, however, are a far cry from deeming the entirety of the USCP's January 6 footage a *public* record subject to wholesale disclosure.

As for the internal USCP emails it has sought, Plaintiff practically abandons the argument. It makes no effort to explain how any of the email communications it has sought could amount to a public record and instead attempts to foist that burden back onto the USCP, when Plaintiff itself has already admitted that this burden is its own to bear. Plaintiff has no basis to obtain these emails under the common law, nor does it contest that many of them can be requested from Executive Branch agencies under the Freedom of Information Act.

Defendant is entitled to summary judgment.

1

**ARGUMENT**

**I.     SOVEREIGN IMMUNITY BARS THIS ACTION**

Defendant's opening brief demonstrated that Plaintiff had not identified any waiver of sovereign immunity, nor could it do so by relying on mandamus relief under 28 U.S.C. § 1361 or the *Larson-Dugan* exception to sovereign immunity.  Def.'s Mot. for Summ. J. (Def.'s MSJ) at 5-6, ECF No. 12.  In response, Plaintiff continues to rely on 28 U.S.C. § 1361, Pl.'s Cross-Mot. for Summ J. (Pl.'s Mem.) at 3, but the very case it cites explains that "[i]t is well settled that [section 1361] does not by itself waive sovereign immunity."  *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) (*WLF II*).  Moreover, section 1361 "is only a source of jurisdiction for district courts to exercise writs of mandamus to employees of the *Executive* branch."  *United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011) (citing *Trackwell v. United States Gov't,* 472 F.3d 1242, 1247 (10th Cir. 2007); *Liberation News Serv. v. Eastland,* 426 F.2d 1379, 1384 (2d Cir.1970) ("[I]n enacting []§ 1361 . . . Congress was thinking solely in terms of the executive branch.") (Friendly, J.))).

Likewise deficient is Plaintiff's response on the *Larson-Dugan* exception.  Defendant argued that this exception was not available because Plaintiff had not identified any "officers of the sovereign" allegedly acting "beyond statutory authority or unconstitutionally," as the exception requires.  *See* Def.'s MSJ at 5-6.  Rather, Plaintiff sued only the Capitol Police and asserted only a common law claim.  *See* Compl. ¶ 9, ECF No. 1 (alleging that the USCP "is in violation of the common law right of access to public records").

In *Larson v. Domestic & Foreign Com. Corp.* itself, the Supreme Court rejected a common law claim as a basis for the *Larson-Dugan* exception to sovereign immunity.  After allowing that a suit alleging action by a government officer beyond statutory authority or unconstitutional action by that officer would fall within the exception to sovereign immunity, the *Larson* Court considered

2

a "third category of cases"—those alleging that a government officer's action was "'illegal' as a matter of general law, whether or not it be within his delegated powers." 337 U.S. 682, 692 (1949). The Court rejected as "erroneous" the plaintiff's theory that such suits also fall within this exception to sovereign immunity. Doing so, the Court explained, would "confuse[] the doctrine of sovereign immunity with the requirement that a plaintiff state a cause of action." *Id.* "In a suit against an agency of the sovereign, as in any other suit, it is . . . necessary that the plaintiff claim an invasion of his recognized legal rights . . . . [b]ut, in a suit against an agency of the sovereign, it is *not sufficient* that he make such a claim." *Id.* at 693 (emphasis added); *see also Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976) ("In order to plead successfully that the acts of a government officer exceed his statutory authority a plaintiff must do more than simply allege that the actions of the officer are illegal or unauthorized."); *Locke v. Warren*, --- F. Supp. 3d ---, No. 19-61056-CIV, 2020 WL 2763890, at *3 (S.D. Fla. 2020) (explaining, in common law right of access case, how a plaintiff's "fail[ure] to identify even a single statute that would have directed [the defendant] to release the records he requested" would defeat a claim to meet the *Larson-Dugan* exception).

Plaintiff responds by citing *WLF II* and *Judicial Watch v. Schiff*, 474 F. Supp. 3d 305 (D.D.C. 2020), *aff'd on other grounds*, 998 F.3d 989 (D.C. Cir. 2021). Pl.'s Mem. at 3. Defendant previously acknowledged that *WLF II* held that the question whether the *Larson-Dugan* exception to sovereign immunity applied in a common law right of access suit against the U.S. Sentencing Commission merged with the merits of the plaintiff's claim. Def.'s MSJ at 6 n.1. But the court's analysis elided the fact that the *Larson-Dugan* exception only applies when an official is alleged to have acted beyond statutory authority or unconstitutionally. *See also Judicial Watch*, 474 F. Supp. 3d at 313-14 (following *WLF II*'s holding on the *Larson-Dugan* exception's applicability as binding precedent). Plaintiff's failure at summary judgment to prove, let alone allege, any conduct

3

by a USCP officer that violates a statute or the Constitution renders it unable to invoke the *Larson-Dugan* exception to sovereign immunity.

## II. PLAINTIFF'S CLAIMS LACK MERIT

### A. There is no basis to order disclosure of the USCP's security camera footage from within the Capitol on January 6

Plaintiff's claim for access to thousands of hours of the USCP's surveillance video footage—"all video footage from within the Capitol" during a nine-hour period on January 6, 2021—fails because that footage is not a "public record," as the D.C. Circuit has defined one. As Plaintiffs acknowledge, the relevant test is whether the material is "a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *WLF II*, 89 F.3d at 905. Although the USCP's camera system recorded an event on January 6 that gained immediate historical significance and its footage has been used by investigators elsewhere in the government, the USCP's surveillance footage is just that—raw surveillance video. It was not "created" and "kept" for the purpose of memorializing or recording any official action by the USCP. Def.'s MSJ at 11-13.

Rather than focus on the relevant test, Plaintiff advances an argument based on its own assessment of the footage's importance, arguing that the footage "is a unique and critical record of an extraordinary moment in our history" and then jumping to the conclusion that it therefore must be released wholesale to the public. Pl.'s Mem. at 8. But regardless of whether the footage has historical relevance (and the USCP would not deny its evident importance to ongoing investigations), that is not the governing test for determining a public record. Plaintiff cannot obtain the footage from this Court under the common law simply by arguing that it is "extraordinary" or "unique." Pl.'s Mem. at 5, 8.

4

Where it does engage with the relevant test, Plaintiff incorrectly argues that the footage automatically became a public record when the USCP decided to preserve it. Pl.'s Mem. at 6, 8. As the USCP has explained, such preservation decisions are not uncommon by the USCP, *see* Joyce Decl. ¶¶ 14-15, and it is not the case that the USCP is obligated to make all such preserved footage publicly available. Indeed, such a rule would tend to undermine the investigative interests that typically motivate such preservation decisions by immediately requiring disclosure of the very evidence critical to a pending investigation. That is no less so in this case, when the USCP immediately preserved the footage because of its obvious value as a record of the events of January 6. Nor does preserving video footage make it something other than raw surveillance video, as Plaintiff argues. *See* Pl.'s Mem. at 6 & n.1. While it may be true that the January 6 security footage is being "treated differently" from unpreserved footage of the Capitol on other days due to preservation obligations, *see id.* n.1, that does not alter the fact that the footage was not "created and kept" to memorialize any official government action. *WLF II*, 89 F.3d at 905.

That the footage may be used afterwards by other government agencies to investigate or prosecute unlawful activity does not alter the analysis, as Plaintiff further argue. For example, Plaintiff maintains that the footage is a public record because the USCP "already has released portions to multiple entities for a wide range of purposes" and because the footage "will be used in various capacities in the future." Pl.'s Mem. at 6, 7. But while the footage has become relevant to the efforts of law enforcement agencies and Congress to detect and prosecute criminal conduct committed on that day, those subsequent actions do not alter the fundamental nature of the footage itself. Indeed, subsequent investigative activity is to be expected when potentially unlawful conduct is captured on surveillance video—the video recording becomes critical to the subsequent investigation and any prosecution. That footage, however, like the USCP's security footage at issue here, was not created and kept "for the purpose" of some official investigative action or other

5

matter of legal significance. The security camera footage was instead created and kept for the purpose of recording activity at the Capitol building and grounds, the same as is true every day that the USCP's security camera system is in use. That this footage is now of assistance to law enforcement agencies and congressional investigators to determine what occurred at the Capitol on January 6 does not transform it into a public record.

Because Plaintiff has not demonstrated that the video footage is a public record, the Court's inquiry should end there and disclosure should be denied.

Separate from its flawed public record analysis (and assuming the Court deems the footage a public record), Plaintiff attempts to undermine only one of the interests that the USCP articulated in maintaining the confidentiality of the video footage. *See* Pl.'s Mem. at 7. In its opening brief, the USCP argued that the footage should remain confidential because (1) its disclosure could jeopardize the integrity of criminal and congressional investigations into the events of January 6; (2) its disclosure could reveal the locations of USCP cameras, Capitol entry and exit points, office locations, and USCP security techniques and methods employed on January 6; and (3) disclosure of certain "security information" footage is prohibited by statute, *see* 2 U.S.C. § 1979; Joyce Decl. ¶ 20. Plaintiff, relying on *United States v. Torrens*, --- F. Supp. 3d ---, 2021 WL 4192048 (D.D.C. 2021), argues that the footage's release would not actually compromise USCP security interests. Pl.'s Mem. at 7.

In *Torrens*, the court ordered the USCP to disclose to media organizations nine specific videos (five of which were from the USCP's system) considered by the court in the criminal defendant's plea hearing. 2021 WL 4192048 at *2, 7. The videos at issue depicted, among other things, Torrens's conduct in and around the Capitol complex on January 6. *See id.* at *2. Yet in that case, the court did not evaluate the video footage under the *WLF II* test for a public record; rather, it concluded that the defendant-specific videos constituted "judicial records" because the

6

Court had "view[ed] and rel[ied] upon the video exhibits in accepting defendant's guilty plea" and they "therefore 'affected the court's decisionmaking process.'" *Id.* at *5 (citation omitted). In contrast to the test for a public record, which, as discussed above, is limited to documents created and kept for the purpose of memorializing or recording official action, the test for a judicial record first applies a strong presumption in favor of public access to judicial proceedings, and then looks to the role the document played in the adjudicatory process. Documents and other materials filed in court intended to influence the court are considered judicial records. *See id.* at *4 (citing *In re Leopold*, 964 F.3d 1121 (D.C. Cir. 2020)).

The security inquiry in *Torrens*, moreover, is distinct from the one posed here: whether the *entirety* of the footage from the USCP's security camera system for a nine-hour period on January 6 is a public record. The mosaic of information that could emerge from such a large volume of security footage is far more detailed and fulsome than the more limited information which could have been revealed by the videos at issue in *Torrens*, and which the court found inadequate to justify withholding.[1] For all these reasons, the treatment of video excerpts in *Torrens* and other January 6 criminal cases is readily distinguishable from the instant case.

### B. There is no basis to order disclosure of the requested email communications of USCP leadership

Plaintiff requested two categories of emails communications: (1) emails between the USCP Executive Team and the Board; and (2) the Capitol Police Board's emails with various Executive Branch law enforcement agencies. With respect to the second category, the USCP explained in its

---

[1] *In Re: Application for Access to Video Exhibits*, also relied on by Plaintiff, *see* Pl.'s Mem. at 7, with the exception of one defendant-specific video, none of the videos at issue were from the USCP's security system, the videos had already been "extensive[ly] discuss[ed]" in court proceedings, and, in any event, the government did not object to disclosure. 2021 WL 5769379, at *2, 6 (D.D.C. 2021). *United States v. Jackson*, 2021 WL 1026127 (D.D.C. 2021), which Plaintiff also cites, *see* Mem. 7, similarly involved, among other non-USCP videos, only two defendant-specific videos from the USCP, of 55 and 22 seconds in duration. *Id.* at *1-2.

opening brief that it did not possess or control email repositories of the Board and that those documents are in any event available for request through the FOIA.  *See* Def.'s MSJ 6-9; Joyce Decl. ¶ 3, Ex. A.  Plaintiff fails to respond to either argument, and has accordingly conceded them. *See, e.g.*, *Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded.").

In fact, Plaintiff makes only one, cursory argument with respect to its requests for email communications.  Plaintiff speculates that at least some of the requested emails must be public records and puts the burden on the USPS to produce a *Vaughn* index of all of the responsive email communications.  Pl.'s Mem. at 9.  But as Plaintiff has itself elsewhere acknowledged, "[t]he burden remains on Plaintiff to demonstrate that the requested records are public records."  Pl.'s Mot. for Discovery at 10, ECF No. 14-1.  Plaintiff has not come close to satisfying that burden, making no attempt to identify what sorts of characteristics would convert an internal USCP email into a public record or otherwise respond to the USCP's argument that the emails do not memorialize any official action or other decision of legal significance.  *See* Def.'s MSJ at 10-11; Joyce Decl. ¶ 7-8.  As for whether to order a *Vaughn* index or equivalent, as Plaintiff requests, *see* Pl's Mem. at 9, the Court already has before it from Defendant's opening submission sufficient basis to determine that the USCP's internal email correspondence are not public records subject to the common law right of access.  *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1452 (D.C. Cir. 1994).

## CONCLUSION

For the foregoing reasons and for the reasons stated in the USCP's Motion for Summary Judgment, the Court should enter summary judgment in favor of Defendant U.S. Capitol Police on

8

all of Plaintiff's claims.

Dated:  February 18, 2022                                  Respectfully submitted,

                                                                     BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director
Federal Programs Branch

MARCIA BERMAN
Assistant Director
Federal Programs Branch

*/s/ M. Andrew Zee*
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6646
Fax: (415) 436-6632
E-mail: m.andrew.zee@usdoj.gov

*Counsel for Defendant*