**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, Inc. | Civil Cause of Action No. |
| Plaintiff, | |
| v. | 1:21-cv-00401-FYP |
| U.S. CAPITOL POLICE | |
| Defendant | |

**DECLARATION OF COUNSEL JONATHON A. MOSELEY REPRESENTING
CRIMINAL DEFENDANT OATH KEEPER KELLY MEGGS
IN SUPPORT OF PLAINTIFF JUDICIAL WATCH'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Jonathon A., Moseley, Esq, hereby submit this sworn declaration in support of the

Plaintiff JUDICIAL WATCH, Inc., pursuant to 28 U.S.C. § 1746, and hereby declare and state

as follows:

1. I am over the age of 18 years old and legally able to make this sworn declaration.

2. I am personally knowledgeable of all of the matters averred herein.

3. Judicial Watch seeks release in the public interest of documents and other records

   including video recordings depicting, about, or related to events on January 6, 2021.

4. The Defendant seeks to prevent public disclosure of these documents and records.

5. Initially, this Court has already held that the U.S. Capitol Police is subject to a FOIA-

   like lawsuit ***under the common right law of access*** exactly like and with the same

   nature and purpose as this lawsuit in *Jason Leopold and Buzzfeed News v. Yoganda*

   *D. Pittman*, U.S. District Court for the District of Columbia, Case No. 1:21-cv-00465.

   A copy of the Complaint is attached.

6.  Today, I am the attorney of record for Oath Keeper Kelly Meggs, a criminal defendant charged under allegations concerning events on or about January 5-6, 2021, in and around the District of Columbia, in the case of *United States v. Stewart Rhodes, et al.,* Criminal Case No. 1:22-cr-00015 (previously structured as part of *United States v. Thomas Caldwell, et al.*, Criminal Case No. 1:21-cr-00028).

7.  As a criminal defense attorney defending an Oath Keeper member who is in pre-trial detention and facing prosecution relating to events happening on or about January 5-6, 2021, in the District of Columbia, I have been provided access under Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland* to the documents and records that Judicial Watch is seeking in this case (although the massive amount of data has been produced to the criminal defense attorneys in ineffective, disorganized, technically deficient ways).

8.  Having actually seen the documents and records being withheld from the public under the Court's Protective Order, I can testify and affirm that there is no valid reason for the documents and records to be withheld from the public.

9.  I believe that I owe the Court the benefit of information that may be helpful to the Court' full and comprehensive and careful consideration of these matters.

10. I have had actual experience as a lawyer in litigating Freedom of Information Act (FOIA) cases since the 1990s until last year, including under Virginia state law as well as under Federal law.

11. As a result, I am very familiar with one of the fundamental problems and/or challenges with FOIA cases, in that the government agency has unique access to information about its own internal files and internal operations, and what kind of

search it actually conducted for responsive documents, etc.

12. In most FOIA litigation, the government makes unilateral assertions that a plaintiff is unable to counter or challenge because the government has exclusive knowledge of its own internal files and operations which are unknown to the FOIA plaintiff.

13. For example, about five years ago I worked on one FOIA lawsuit in which the U.S. State Department claimed to have no responsive documents on a topic but when I checked I found several documents posted on the State's Department's public website which it claimed not to have found and also found press releases and public posts about official actions by the Secretary of State which could not have occurred without related documents involving the press releases or public, official actions. This Court nevertheless granted summary judgment in favor of the State Department despite my irrefutable evidence that the U.S. Department of State was withholding.

14. However, here in this case, because I have been provided access to the documents and records as a criminal defense attorney, unlike the usual FOIA lawsuit, I can and do confirm that the documents and records exist and that any grounds or basis for withholding these documents and records including video recordings or audio recordings from the public are false and asserted in bad faith by the U.S. Capitol Police, the investigating / collecting agency the Federal Bureau of Investigation, and the U.S. Attorney's Office for the District of Columbia.

15. Specifically, there is no information contained within these documents and records that can justify withholding them from the public.

16. At the prosecution's request, the Court entered a Protective Order for information disclosed from the USAO to the defense attorneys in the January 6 criminal

prosecutions.

17. Please note that this Protective Order ***does NOT*** make the documents and records

confidential.  It only governs ***disclosures*** from the USAO to defense attorneys.

Nothing in the Protective Order limits the disclosure by the USCP or by order of this

Court to the public of these same documents and records within this lawsuit here.

18. However, the USAO is rampantly abusing the Protective Order.

19. There is no information contained in these documents and records which could justify

withholding them from the public.

20. Nearly all of the documents and records designated unilaterally and in bad faith by

the USAO as "Sensitive" are withheld on a claim of protecting the privacy of third

parties.

21. For example, FBI interview notes of Oath Keeper "Person Ten" and "Person One" of

interviews taken in May 2021 disprove false allegations against the Oath Keeper

Defendants.

22. The USAO disclosed damaging information early in the case, and then after some

Defendants had pled guilty belatedly disclosed the evidence proving the allegations to

be completely false very late in the course of the criminal prosecutions.

23. Note that discovery and disclosures of course are not copied to the presiding judge

unless attached to a motion.  But this Court has the authority to look behind the

Protective Order and confirm all of these facts.

24. When the "Person Ten" FBI interview notes were released ***only on December 1,***

***2021***, I raised hell as to why these May 2021 interview notes were designated as

"Sensitive" arguing that embarrassment to the government is not a valid reason for

secrecy.

25. Upon my challenge, the USAO's Assistant U.S. Attorney Kathryn Rakoczy admitted that if the names of unindicted third parties and the names of FBI agents and special agents were redacted, than the "Person Ten" interview notes could be publicly released.

26. AUSA Kathryn Rakoczy reviewed and confirmed the redaction for final public release.   A copy is attached hereto as an exhibit.

27. The redaction job is sloppy because I heard of concerns that electronically added redaction can sometimes be removed digitally allowing the information underneath to become visible.  Not knowing or having time to research which software would be safest to prevent such digital hacking, I used old-fashioned hard paper methods.

28. Note that as a criminal defense attorney in these cases, I have personally interviewed "Person Ten" and others to confirm that he told the Government in May 2021 that the entire case against the Oath Keepers is a fabrication by the Government.

29. This again demonstrates the bad faith of the USCP in this lawsuit by Judicial Watch and argues against continued withholding of these documents and records from the public.

30. The bad faith of presenting a false impression of guilt by innocent people, and intentionally polluting the jury pool and trying the criminal Defendants in public, argue against the USCP's claims and argue for public disclosure.

31. Specifically, "Person Ten" told me as he also told the Government in May 2021 that the Oath Keepers came to Washington, D.C. to volunteer as "Protective Security Details" to provide logistics, security (not just as a bouncer but to walk VIPs and

speakers through the crowds such as up to the stage), be prepared to respond to attacks from counter-demonstrators, and provide medical first aid.

32. Person Ten was put in charge of all operations of the Oath Keepers in and around the District of Columbia on or about January 5-6, 2021, and therefore his FBI interview is authoritative.

33. One of the Oath Keepers was more or less commandeered by the U.S. Capitol Police and spent the entire day on site at the U.S. Capitol, while wearing his distinctive Oath Keepers uniform, providing first aid and light medical care to injured persons at the U.S. Capitol, under the USCP's auspices and supervision.   Thus, the USCP has and had actual knowledge of the true mission of the Oath Keepers on January 6, 2021 to provide assistance and logistical and security support to legal, permitted, peaceful rallies and demonstrations, which services were pre-arranged prior to January 6, 2021.

34. In other words, secrecy of the documents and records, including video and audio recordings, sought by Judicial Watch, Inc. is being used to work an injustice in bad faith and is being used to cripple fair access to justice and due process for the affected criminal defendants, falsely pressure plea deals that would probably not occur in the presence of full (accurate and balanced) disclosure, and to interfere with the public's ability to know, understand, and monitor the activities of their government.

35. That is, withholding of these documents and records is being done in bad faith and against the public interest.  Recall that court proceedings are presumptively public events in our legal and governmental system in the United States of America.

36. Just this week, the Honorable Trevor McFadden, U.S. District Court Judge in this

Court documented and chastised the Government for misleading information.  See, Order, attached.

37. However, demonstrating clear bad faith in withholding these documents and records, the USCP, the FBI, and the USAO has spread and maintained a knowingly-false narrative, deceiving the public and the courts aided by the inappropriate secrecy of these documents and records.

38. Moreover, failure to disclose the requested documents and records is being used to mislead the American people about events on January 6, 2021, with serious, future, real-world consequences possible.

39. It is absurd of the Government to claim that any of the demonstrators on January 6, 2021, wanted to stop the Joint Session of Congress mandated for the purpose of resolving disputes about Electoral College votes, because that could not possibly make Donald Trump President for another four years.

40. The Trump team's legal memoranda by John Eastman and Jenna Ellis leaked to the public all required (in substance, in effect) that the Joint Session of Congress ***MUST NOT BE INTERRUPTED***.  *See*:  Dominick Mastrangelo, "**Trump adviser Navarro: Rioters on Jan. 6 hurt plan to challenge election result**," THE HILL, January 5, 2022, accessible at **https://thehill.com/homenews/588312-navarro-rioters-on-jan-6-hurt-plan-to-challenge-election-result**

41. There is no such thing as a "hold over" President past Noon on January 6 every four years.

42. Yet knowing the claims to be false, the Government including the Government has tried to convict the Defendants in public in advance of trial of trying to obstruct an

official proceeding (punishable by 20 years in prison) knowing that the Oath Keepers came to Washington, D.C. to assist with lawful, peacefully, and legally-permitted rallies and events.

43. Thus the importance of releasing these documents and records is high and any reasons for withholding them are at their nadir.

44. Court trials are presumptively open to the public, including as a safeguard.

45. For example, the USAO provided to defense counsel in *USA v. Nordean*, Case No. 1:21-cr-00175, an external hard drive called a "Fortress" brand with a keypad on the front of the external hard drive.  One must enter the security code on the front of the external hard drive to access the contents.

46. However, the actual data is nothing but video recordings by individuals on smart phones and a Sony video camera of various scenes out in public of people appearing in public on the Washington Mall and around the U.S. Capitol.

47. When this farce was challenged by me to the USAO, the USAO responded that the audio portion of the video recordings contained personal confidential information **overheard** on the video / audio recordings.

48. In fact, listening to the videos, the video recordings on the "Fortress" drive contained no such private information of third parties of any kind, and barely any intelligible conversation at all, mostly just crowd noise.

49. Thus, the video recordings were withheld in manifest bad faith and on false pretenses.

50. The USAO promised upon challenge to review the videos for removal of the sensitive designation under the Protective Order but – as usual – never did.

51. The pattern is to politely promise to look into it, but never in fact to do so.

52. In fact, the importance of at least four (4) of these videos was overwhelming.

53. As part of the torrent of lies about January 6, 2021, the Proud Boys are accused of leading an assault upon the U.S. Capitol, that is having pre-planned to have violent attacks upon the U.S. Capitol building.

54. The USAO literally accused Zachary Rehl of "storming" the U.S. Capitol armed only with a radio and goggles.  That is not an exaggeration of what the USAO claims.

55. But in fact, the still-secret videos show these same Proud Boys on the Washington Mall posing for tourist photographs of the Washington Monument over their shoulders behind them, standing around on the Washington Mall drinking water bottles, milling around, with their bags on the grass, and then later walking very, very, very slowly along the Washington Mall.  Although a cropped photograph seemed to show Zachary Rehl angrily leading a column of Proud Boys toward the Capitol, the video showed that in fact a broad row of random people – only a few of them Proud Boys – were calmly and slowly meandering about 30-40 men abreast, *NOT* being led by anyone.  Contrary to the false public claims of "storming," these videos secured on a "Fortress" key-pad protected external hard drive show the Proud Boys numbering about 50 with about 150 random people following them calmly walking around with obviously no plan in mind whatsoever, stopping at food trucks for lunch, etc.  There was no one leading and no one "storming."  The videos that Judicial Watch is seeking in this lawsuit would reveal this.

56. Again, while the public is not allowed to see these videos, the presiding judge in this case has authority to see these videos for herself to confirm this.

57. Thus the still-secret videos are meaningful and informative of these public events.

58. The reasons for other documents and videos being designated as "Highly Sensitive" under the Protective Order are the false claims that videos recorded from surveillance security cameras inside and outside the U.S. Capitol Building (referred to as CCTV or Closed-Circuit TV videos) would reveal the placement of the cameras.

59. In fact, the placement of the cameras is incredibly obvious to anyone.  That is, the placement of these CCTV cameras fails to qualify as confidential because the locations are unavoidably dictated by each room and hallway or other space and implicate no choice or discretion in the placement of such CCTV cameras.  There is nothing about the security of the U.S. Capitol that is revealed by these videos.

60. No security information would be disclosed by the release of these CCTV videos.

61. In fact, many of these videos have already been ordered to be released by other judges of this Court.

62. I have not seen any other documents or records or videos that contain, show, or reveal any security information whatsoever other than the claim that the scenes viewed would show where the CCTV cameras are located.

63. I have not seen any details about security systems or procedures among these documents or records.

64. While the U.S. Capitol – the most public government building in the world and in world history – is designed for the public to interact with their representatives, if the U.S. Capitol Police and the Congress wants to improve the security of the building, there are other, more effective, more appropriate, more meaningful ways to improve the security of the U.S. Capitol building:

(a)  All of the entrance doors could be strengthened along with windows.

(b) There are no signs posted alerting the public that the Capitol was ever closed due to COVID-19 at any time.

(c) There are no signs posted alerting the public that the traditionally open and public building might sometimes be closed.

(d) Although public information reports that there were between 1200 and 1600 "sworn" U.S. Capitol Police on duty, on-site on January 6, 2021, this is clearly false information.  The USCP police officers were let down by their leadership.  Along the "Pedestrian Gate" – which is not a gate at all but just a wide open space between purely decorative "faux" walls – across from the so-called "Peace Monument" fountain along Second Street West there were only 5-6 police officers on January 6, 2021, manning some chicken wire and bicycle racks, as shown on video recordings, including some of the video recordings sought by Judicial Watch in this lawsuit.  Had 200 USCP police officers been stationed at that walkway behind the chicken wire and bicycle racks, demonstrators would never have entered the West side grounds of the U.S. Capitol grounds.

(e) Among the video recordings sought by Judicial Watch is a scene of a loud public address system warning audible throughout the East side Capitol grounds warning everyone in the vicinity that a curfew began (at that time) at 6:00 PM on January 6, 2021.  Yet at no time earlier during the events was there any announcement or attempt to ask the demonstration crowds to disburse.  Because trespass requires a warning to depart, the failure to use the public address system at any time throughout the day diminished the Capitol's security.

(f) In other words, depriving the public of the documents and records sought by

Judicial Watch in this case would not in any way improve or safeguard the security of the U.S. Capitol.  However, appropriate steps to actually improve the building's security in standard and meaningful ways would be appropriate.

65. Furthermore, most of these videos will have to be produced in open court, open to the news media and the public, during upcoming criminal trials of prosecution.

66. I have not seen any other documents, records, video or audio recordings or any other information that present any reason to withhold them from the public.

67. There is no national security, military, diplomacy or other sensitive information among these documents or records.

68. There are no sources or methods revealed in any of the documents or records, other than the completely obvious (that is not confidential) technique of just interviewing people who might know something.

69. In fact, the inappropriate levels of inapplicable secrecy is directly harming and paralyzing the criminal prosecutions and the efforts of hundreds of defense attorneys to prepare for trial.  The abuse of the Protective Order is creating complications that are violating the Due Process rights of the criminal defendants because of the deluge of information being filtered through nonsensical layers of unnecessary computer restrictions. Trials are being delayed purely because of the problems with the disclosures and discovery information under these improper restrictions.

70. In February, 2021, I acting then as a columnist and attorney for National File, an on-line news and news analysis media publication, noticed that video showed temporary toilets set up on the U.S. Capitol Grounds with a line of demonstrators waiting to use them.  See:  **https://www.youtube.com/watch?v=I8TS8Yjrtzk**

71. From past involvement in a legally-permitted, non-partisan demonstration on the U.S.
    Capitol Grounds in September 2020, having nothing to do with the 2020 election, I
    knew that no items such as porta-potties can be placed on the grass of the U.S.
    Capitol Grounds without the issuance of a permit and detailed instructions from the
    USCP.  Therefore, I knew there must have been a permit issued for January 6, 2021,
    near the Northeast corner of the U.S. Capitol Grounds across Second Street East from
    the U.S. Supreme Court.

72. Therefore, as an attorney, in February 2021, I personally sent demand letters for
    public disclosure of the existence of any demonstration permits for demonstrations to
    be held on the U.S. Capitol Grounds on January 6, 2021, which demands were
    ignored by the USCP.

73. I wrote the article at:  Jonathon Moseley, ***"Are US Capitol Police Hiding Permit for
    January 6 Demonstrations?"*** National File, March 10, 2021, accessible at:
    **https://nationalfile.com/are-us-capitol-police-hiding-permit-for-january-6-
    demonstrations/?utm_source=rss&utm_medium=rss&utm_campaign=are-us-
    capitol-police-hiding-permit-for-january-6-demonstrations**

74. Whereas the U.S. Park Police immediately, promptly, and thoroughly responded to
    my inquiry with copies of all permits issued for January 6, 2021, on all grounds
    managed by the U.S. Park Police, the U.S. Capitol Police ignored my parallel requests
    concerning the grounds of the U.S. Capitol.

75. In other words, the U.S. Capitol Police acted in bad faith by dodging the existence of
    permits for demonstrations on the U.S. Capitol Grounds.

76. When Buzzfeed News ultimately forced USCP by obtaining an order of this same

13

Court to disclose the demonstration permits, on or about September 9, 2021, the USCP revealed that there had been not one but SIX (6) different demonstration permits issued by the U.S. Capitol Police authorizing demonstrations on January 6, 2021, on the U.S. Capitol Grounds, at the same time as the quadrennial Joint Session of Congress, in *Jason Leopold and Buzzfeed News v. Yoganda D. Pittman*, U.S. District Court for the District of Columbia, Case No. 1:21-cv-00465.

77. In other words, from January 6, 2021, through September 9, 2021, for eight (8) months, the U.S. Capitol Police was content to lie to the American people by omission and deceive the courts, the Defendants, the news media, and the public by keeping secret the issuance of the demonstration permits.

78. Had Buzzfeed News not sued ***under the same legal theory as Judicial Watch*** is suing under now, in this same Court, and won, the U.S. Capitol Police would still be lying to the American people, the Defendants, and the courts, by withholding the existence of these six (6) permits for demonstrations on the Capitol grounds on January 6, 2021.

79. In full disclosure, I, Jonathon Moseley, was a staff attorney employed by Judicial Watch in the late 1990s.

80. I have not had any relationship with Judicial Watch since the late 1990s.

81. I have had no professional interaction or coordination with Judicial Watch of any kind since the late 1990s.

82. I have had no involvement in this particular case ever and learned of it only through news coverage.

I hereby certify under the penalty of perjury that the foregoing Declaration is true and correct to the best of my knowledge and belief.

14

Jonathon A. Moseley, Esq.

USDCDC Bar No. VA005
Virginia State Bar No. 41058
Mailing address only:
5765-F Burke Centre Parkway,
        PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
**Contact@JonMoseley.com**
**Moseley391@gmail.com**